[L. A. No. 17080. In Bank.—May 29, 1939.]

SHY ZOLKOVER et al., Petitioners, v. INDUSTRIAL ACCIDENT COMMISSION and HARRY F. ROBINSON, Respondents.

C. W. Bowers for Petitioners.

Everett A. Corten and Eldon B. Spofford for Respondents.

SHENK, J.—The petitioners seek an annulment of the order of the Industrial Accident Commission, granting compensation to the applicant, Harry F. Robinson.

Robinson was employed by Shy Zolkover as a salesman in a store dealing in men's wear and furnishings in the city of Los Angeles. About 11 o'clock on the morning of July 13, 1937, Robinson was sent by his employer to obtain some grey thread from Mr. Weiner's Army and Navy Store adjoining. Robinson testified before the commission that while he was in the latter store he observed that Mr. Weiner had hold of a Mexican by the hair; that the Mexican was attempting to steal shirts; that Robinson saw the Mexican pull a knife; that he warned Weiner to "look out"; that Weiner loosed his hold on the Mexican who fled from the store, slashed at Robinson as he went by, cutting the index finger of his left hand. Robinson gave chase. He observed that the Mexican stabbed another by-stander, cutting him in the abdomen. Robinson caught up with the Mexican and held him until peace officers arrived, receiving additional cuts on the fingers of his left hand while attempting to take the knife away. ▮ The commission's implied finding that the above facts are true is binding on this court. In its first order the commission con-

cluded that the injury sustained by the employee to the index finger of the left hand was an injury arising out of and occurring in the course of the employment. On June 1, 1938, it awarded compensation based on permanent disability of 3¾ per cent, entitling the employee to $18.52 a week for fifteen weeks, or a total sum of $277.80.

The employer and his insurance carrier petitioned for a rehearing on the ground that the evidence did not warrant the finding that any injury occurred while the employee was in Weiner's store and that none of the alleged injuries arose out of the employment. The petition was denied on August 20, 1938, but at the same time the commission, on its own motion, opened the case for a rehearing on the question whether both injuries were compensable, namely, the injury inflicted in the store as to which compensation was awarded by the order of June 1, 1938, as well as the injury inflicted during the scuffle in the street.

The commission, on September 13, 1938, made another order whereby it set aside its first order, and concluded that both injuries were compensable. It thereupon awarded $18.52 a week for sixty-one weeks, a total of $1129.72, based on 15¼ per cent of permanent disability. Subsequently the commission amended its order to provide for an award of $18.52 a week for thirty weeks based on 7½ per cent of permanent disability.

■ There is no merit in the contention that the petition for review was filed too late. It was filed in the District Court of Appeal on October 13, 1938. Inasmuch as it was filed on the thirtieth day after the decision on rehearing, it was within the time prescribed by section 67 (a) of the Workmen's Compensation Act.

■ The question for determination is whether any of the injuries sustained by the employee arose out of and occurred in the course of the employment.

The commission takes the position that both stabbings were a part of the *res gestae;* that there was such a close sequence of events between the first assault and the second stabbing that it is "impossible fairly to split this activity into parts, and they must be regarded as part of the same transaction. An industrial assault remains an industrial assault so long as events occur in continuous sequence without opportunity for

reflection. If the injury from the first assault herein is compensable, the second one is also compensable."

It is the petitioners' contention that the employee was performing no service for his employer at the time he was injured, and that therefore neither injury was one which arose out of and occurred in the course of the employment. We observe, however, that the employee was serving his employer when he went to the store to obtain a spool of thread. Any ordinary risk that he was subjected to while performing that service and which resulted in injury would be chargeable to industry and be compensable. That the employee was serving his employer at the time he received the first cut from the knife of the Mexican assailant must be deemed concluded by the decision in *Frigidaire Corp.* v. *Industrial Acc. Com.,* 103 Cal. App. 27 [283 Pac. 974], and the cases therein cited.

The petitioners rely upon such cases as *San Francisco & Sac. Ry. Co.* v. *Industrial Acc. Com.,* 201 Cal. 597 [258 Pac. 86], *Northwestern Pac. R. R. Co.* v. *Industrial Acc. Com.,* 174 Cal. 297 [163 Pac. 1000, L. R. A. 1918A, 286], *Pacific Ind. Co.* v. *Iudustrial Acc. Com.,* 27 Cal. App. (2d) 499 [81. Pac. (2d) 572] (July, 1938), *Jenks* v. *Carey,* 136 Cal. App. 80 [28 Pac. (2d) 91], and *Lumbermen's Mutual Cas. Co.* v. *Industrial Acc. Com.,* 134 Cal. App. 131 [25 Pac. (2d) 22], wherein it was held under the particular facts of each case that the employee had not shown that at the time he sustained injury he was on an errand for his employer or engaged in an act within the scope of his duties. None of those cases involves facts as to which the rule invoked by the commission could be made applicable. Nevertheless the petitioners seek the application of the general rule there recognized, that an injury sustained while voluntarily doing something outside of the employment is not an injury suffered in the course of the employment. It is argued that even though, under the Frigidaire case, it be considered that the first injury is compensable, the additional injuries inflicted on the employee after he followed the Mexican into the street and attempted to take the knife from him, were the result of a voluntary act without the scope of the employment and could have no connection therewith.

The commission on the other hand argues the applicability of the decisions in *Matter of Field* v. *Charmette Knitted Fabric Co.,* 245 N. Y. 139 [156 N. E. 642], and *Pendl* v.

*Haenel,* 229 App. Div. 52 [241. N. Y. Supp. 59]. In the first of these cases, Field, superintendent of a mill, ordered a knitter, Magid, discharged for unsatisfactory work. Words and threatening gestures ensued between the two men. After closing time Magid waited for Field in the street a few feet from the door of the mill. When Field came out Magid struck him a blow which caused him to fall backward and fracture his skull, and from which he died. A similar argument was there presented in resisting a death benefit award, the contention being that because the injury was inflicted while the men were on the street, the resulting death did not flow from any industrial hazard. In that case it was said: ''We think the line of division is drawn too narrowly and closely when circumstances of place are thus considered to the exclusion of all others. The quarrel outside of the mill was merely a continuation or extension of the quarrel begun within . . . The situation would be hardly different if a struggle, begun back of the threshold, had ended in a fatal blow delivered on the walk. No reasonable opportunity had been offered the assaulted man to separate himself from the plant, its animosities and dangers. Continuity of cause has been so combined with contiguity in time and space that the quarrel from origin to ending must be taken to be one.''

It is true that in that case the court thus reasoned in applying the rule that an employee was entitled to a safe retreat from the premises of his employer. However, in the present case the assault commenced on premises which must be considered to have been the proper location for the discharge of the duty which Robinson was sent to perform. If at the time of the first injury Robinson had grappled with his assailant and attempted to disarm him while still within the four walls of the premises, it could not be said that additional injuries so received would not be compensable. As the facts in *Field* v. *Charmette, supra,* demonstrate that the same assault may be continuous and be carried outside of the premises, the facts in the present case lead to the conclusion that the sequence of events occurring without opportunity for reflection formed a part of the *res gestae* and constituted one continuous assault. The reasoning of the decision of the New York Court of Appeals was followed in the case of *Pendl* v. *Haenel, supra,* wherein the decedent, a janitor, was stabbed

by a negro whom he found loitering about the employer's premises and had pursued some 150 feet into the street.

It is to be expected that cases wherein the foregoing reasoning may apply will differ on the facts. The point where spontaneity ceases and reflection commences indicating a departure from the field of industrial hazard is a question of fact for the commission to determine. When the fact-finding body may conclude, as the commission did in this case, that the assault commenced at a time and place which would make resulting injury compensable, and such assault continued under circumstances which would justify the conclusion that the assault was a continuing one, the entire injury may properly be held to result from a single assault. Such a case appears to have been presented to the commission in this proceeding. The award based on 7½ per cent of permanent disability was therefore within the proper exercise of its jurisdiction.

The award is affirmed.

Langdon, J., Seawell, J., and Waste, C. J., concurred.

CURTIS, J., Dissenting.—I dissent. I agree with the opinion in awarding compensation for the injury sustained by the employee while in the store where his employer had directed him to make a purchase. I cannot agree, however, with the majority opinion holding that the employee was entitled to an award for the injury sustained by him after he had left the store and was in pursuit of his assailant. The facts of this case bring it clearly under the rule announced in *Northwestern Pac. R. R. Co.* v. *Industrial Açc. Com.*, 174 Cal. 297, 306 [163 Pac. 1000, L. R. A. 1918A, 286], and kindred cases cited in the majority opinion, which hold that, ''When a servant of his own accord and without the direction of his master, steps outside the scope of his employment, whether on the master's business or his own, the master owes him no duty as to the dangers he encounters, and is not liable for the injury received.''

I can see but little resemblance in the facts in this case and the case of *Matter of Field* v. *Charmette Knitted Fabric Co.*, 245 N. Y. 139 [156 N. E. 642]. In that case the superintendent of a mill had some words with an employee a few minutes before closing time. The employee waited outside of the mill, and as the superintendent stepped out of the mill,

he was struck in the face by the employee. The court held that, "Here, almost in the very act of putting his foot without the mill, the employee is confronted by a danger engendered by his work within. The situation would be hardly different if a struggle, begun back of the threshold, had ended in a fatal blow delivered on the walk. No reasonable opportunity had been offered the assaulted man to separate himself from the plant, its animosities and dangers." What similarity can there be in those facts and the facts in the present case?

In the case now before us, the injured employee when he left the store was in no danger whatever. He not only had reasonable opportunity to separate himself from the dangers within the store, but the dangers within the store had ceased to exist. He then exposed himself to a further danger, not only outside, but some distance from the store in which he received his first injury. He thereby stepped outside the scope of his employment, and was at a place where his master owed him no duty as to the dangers there encountered.

The case of *Pendl* v. *Haenel*, 229 App. Div. 52 [241 N. Y. Supp. 59], is equally ineffectual to take the present case out of the general rule which denies compensation to an employee for an injury received by him outside of his employment. In the Pendl case, the injured party was the superintendent of the building in which he found a negro wandering around in the basement who had exhibited a knife and frightened the superintendent's wife, and then fled from the building. The superintendent pursued the negro and was stabbed by the latter some one hundred and fifty feet from the building. The court held: "We are not to determine whether the pursuit was negligent or even sensible, but only whether it was in connection with his master's business. Decedent had to deal with a vicious criminal who came in the building of which he was superintendent. Persons lawfully there might be injured, or the property of his employer destroyed or stolen. The intruder might have had a design to ascertain the plan of the interior of the building in preparation for a later burglarious or felonious entrance. The continuation of the pursuit for one hundred and fifty feet beyond the basement store was not an abandonment of the employment." In that case the pursuit of the intruder by the superintendent outside the building was held to have been made "in connec-

tion with his master's business'', as it was done for the purpose of protecting his employer's property. In the instant case, it cannot be said that the pursuit by the injured party had any connection with or relation to the property of his master. Whatever may have been the purpose of the pursuit, it was wholly disassociated from the interests or property of the master. The Pendl case fails to furnish any exception to the general rule that when a servant of his own accord steps outside the scope of his employment, the master is not liable for any injury received by the servant while acting beyond the scope of his employment.

Houser, J., concurred.

Rehearing denied. Edmonds, J., and Houser, J., voted for a rehearing.