[Civ. No. 13031.   First Dist., Div. One.   Apr. 29, 1946.]

JOSHUA HENDY IRON WORKS et al., Petitioners, v. INDUSTRIAL ACCIDENT COMMISSION and MANUEL MIGUEL, Respondents.

Leonard, Hanna & Brophy for Petitioners.

R. C. McKellips, Henry G. Sanford and J. H. Sapiro for Respondents.

WARD, J.—The petitioners, the employer and the insurance carrier, seek to annul an award to Manuel Miguel of compensation for temporary total disability. The sole question to be decided concerns the sufficiency of the evidence before the commission to sustain the finding that "Manuel Miguel . . . sustained injury arising out of and occurring in the course of his employment." Although the original application before the commission, which was filed by the employer, alleged the basic issue to be "horseplay," the evidence before the referee and upon rehearing presented the fundamental jurisdictional

issue above noted. The commission found against the employer on the "horseplay" issue even if it could be said that there was any evidence in the record to sustain a finding in the employer's favor had it been made. There is no merit, in view of the rehearing referee's report, in the petitioners' contention that the award of the commission rests on an erroneous view of the burden of proof when the employer files the application.

Disregarding all conflicts in the evidence and stating the facts most favorable to the commission's finding, as is the rule in a review of an award of the Industrial Accident Commission in which the issue is the sufficiency of the evidence to support a finding (*Associated Indem. Corp.* v. *Industrial Acc. Com.,* 18 Cal.2d 40, 42 [112 P.2d 615]), the return to the alternative writ shows that the injury to Manuel Miguel occurred in the following manner: Miguel's specific job on the day of the accident was to clean iron castings with a petroleum product called a solvent by spraying the castings with the solvent to cut the grease thereon and then to wash them. These castings were diesel bases, approximately twelve feet by four feet by two and one-half feet, and the solvent was sprayed from five-gallon buckets through the use of compressed air suction hoses which were removed from the buckets when the operation was completed or when the buckets needed refilling. The buckets were unmarked and no petroleum odor emanated from the solvent until it was sprayed onto the castings. Miguel completed this spraying and was talking seriously to his immediate foreman, White, and a plant inspector, Grant. Grant worked for a separate department, but his job was to inspect the castings when they had been sprayed and washed in order to determine if they were clean enough to go to the paint shop. While the three were standing talking, Grant said: "Isn't it (the fumes and this solvent) dangerous? Isn't it dangerous in case of fire?" Whereupon Miguel said: "No, it will not burn." Miguel then picked up a rag, either from his pocket or the floor, dipped it in a bucket of solvent and placed the rag on the concrete floor. He then lighted a match and held it to the rag. Neither Grant nor White made any effort to stop him. White testified that it all happened so quickly he didn't know what was going on. The rag burst into flames and Miguel attempted to stamp it out with his feet. Although it was not a big fire it made a cloud of smoke. Whereupon Miguel, without thinking, took what he thought was a bucket of water and threw it on the flames to put the

fire out. In fact he threw a bucket of solvent onto the flames which flared up, catching his clothes and severely injuring him. His clothes were saturated with the solvent by reason of his spraying job. The employees doing Miguel's work were not forbidden to smoke on the job. It is not clear in the record whether Miguel was waiting for the inspector to inspect his work or for his coemployee to finish his part of the diesel base job. The accident happened close to the end of the working day.

Preliminarily it must be stated that the issue before the court concerns the industrial causation of the original lighting of the rag. In view of the conclusion hereinafter reached, it is unnecessary to consider the commission's contention that Miguel's attempt to put out the fire, in the event his act in lighting the fire did not as a matter of law arise out of and occur in the course of his employment, started a new chain of events solely in the employer's interest for which compensation should be given. ■ The lighting of the rag and the spontaneous reaction to the emergency created were all part of the res gestae. (*Zolkover* v. *Industrial Acc. Com.*, 13 Cal.2d 584, 588 [91 P.2d 106].) ■ If an injury caused by the original act would have been compensable, the thoughtless throwing of the bucket of solvent, thinking it was water, on the flames would not break the causation flowing from the original act for the purposes of determining whether the original act "arose out of and in the course of" Miguel's employment.

■ Having thus limited the issues, it is necessary to determine what inferences the commission could draw from the facts proven which would support their finding. It can be inferred that Miguel's superior knew what Miguel was about to do and did nothing to stop his lighting the rag; in other words, Miguel's superior acquiesced in Miguel's actions and in fact was a participant in the experiment. Although Miguel testified that White and Grant did not know what he was about to do, and White testified that it all happened so quickly he couldn't stop it, the mere recital of events leading up to the lighting of the rag—the deliberate soaking of the rag, the placing of it on the concrete floor and the lighting of the match—shows that what Miguel was going to do must have been apparent to bystanders who were his superiors. It is to be noted that Grant did not occupy a vertically superior position to Miguel in the plant hierarchy, but it may be inferred

that his position as inspector of Miguel's work was superior in point of responsibility and in fact he could have controlled Miguel's actions. Whether or not in the scheme of delegated authority he had an absolute right to, Grant's remark led to Miguel's actions, which fact lends further support to the inference that he could influence Miguel. From the whole recital an inference may be drawn that Miguel's actions were done within the control of his employers and were precipitated from a spirit of cooperativeness and desire to inform, in response to an inquiry, his superiors concerning the nondangerous character of the solvent. From the fact that Miguel's clothes were saturated with the solvent, it also appears, assuming the solvent was inflammable, that neither the risk of the type of injury nor the risk of the extent of the injury was foreign to the nature of Miguel's ordinary employment.

█ With these facts and the inferences to be drawn therefrom in mind the specific issue can be restated: Does an employee who experiments outside of the ordinary course of his duties, but with the acquiescence and approval of his superiors, and who is injured from a hazard inherent in the nature of his work, forfeit his coverage under the workmen's compensation laws? The general rules governing this situation are stated in the annotation in 33 American Law Reports 1335, 1336: ''It is clear that the employee is entitled to compensation as for an injury arising out of and in the course of his employment, when such injury was received in the performance of work for his employer outside the scope of his usual duty, but which the employee had been expressly ordered to do by someone authorized to direct him as to his work; and, even in the absence of such an order, he has been allowed compensation in some cases where he acted in the belief that such an order had been given by someone authorized to do so.'' █ In California where the employer or person in authority over a particular employee acquiesces in particular actions of employees with knowledge of their dangerous character, a finding that the employees are within the course and scope of their employment is sustained on the basis that the employer has impliedly authorized the employee's actions. (*Department of Pub. Wks.* v. *Industrial Acc. Com.*, 128 Cal.App. 128, 131 [16 P.2d 777]; *Pacific Indemnity Co.* v. *Industrial Acc. Com.*, 105 Cal.App. 535, 539 [288 P. 129]; *Payne* v. *Industrial Acc. Com.*, 84 Cal.App. 657, 660 [258 P. 620]; *Standard Lbr. Co.* v. *Industrial Acc. Com.*, 60 Cal.App. 331, 337 [212 P. 720].) Fur-

ther, the California courts have recognized that authority in industrial plants does not necessarily, in fact, flow in a direct vertical line, but that in practice coemployees in different departments or on the horizontal plane do exercise control over the individual employee in the employer's interests. (*Pacific Indemnity Co.* v. *Industrial Acc. Com.*, 202 Cal. 521, 524 [261 P. 987].) ▇ With these principles and authorities in view, on the facts of the instant case there is ample evidence to sustain the commission finding which was based on the rehearing referee's view of the evidence stated as follows: "It would seem that the demonstration made by the employee was certainly something that was invited by the remark of Grant . . . it is also very apparent that White who was the employee's immediate superior and who was present during the entire episode . . . took no steps whatever to dissuade the employee. . . . Some attempt has been made to explain this on the ground that everything happened so fast that White did not have a chance to halt the proceedings. However, it is clear that when Grant asked whether the solvent was inflammable, White, the employee's superior, did not give any answer on the subject and did not in advance take any steps to suggest that an experiment be made elsewhere." The facts of the case come squarely within the reason for the requirement that injuries to be compensable must "arise out of and occur in the course of the employment" as stated in *Ruff* v. *Industrial Acc. Com.*, 123 Cal.App. 168, 169 [11 P.2d 17] as follows: "The essential element of this character of cases is that when the employee is engaged in voluntarily doing something outside the scope of his employment he is temporarily beyond the directions and control of the employer and the liability of the latter attaches only when that relation exists." Here the employee's acts were directly under the control of his immediate superior.

▇ But the petitioners seem to contend that the acts of Miguel were of such an unusual character, increasing the hazards of his employment to such an extent, that his acts took him outside the scope of his employment—that the lighting of the rag amounted to an intentionally self-inflicted injury. In *Associated Indem. Corp.* v. *Industrial Acc. Com.*, 18 Cal.2d 40, 46 [112 P.2d 615], the court says: "Petitioner contends however that Macfie in riding on the switch engine adopted such an unreasonable and hazardous method of traveling from the depot to the dock that it constituted an abandonment of his employment. . . . The doctrine urged by petitioner must be

applied with extreme caution for the reason that it is barely distinguishable from the rules of contributory negligence and assumption of risk which are not applicable in compensation cases. Indeed it may well be asserted that the doctrine of 'added risk', that is, where an employee assumes a risk greater than that usually incident to his employment, he cannot recover, cannot be followed in California because it is in effect nothing more than contributory negligence. (Campbell, Workmen's Compensation, vol. 1, sec. 238; California Constitution, art. XX, sec. 21.) The circumstances giving rise to the doctrine are pertinent in determining the issue as to whether the injury arose out of or in the course of employment. In *California Casualty Indem. Exch.* v. *Industrial Acc. Com.,* 5 Cal.2d 185, 187 [53 P.2d 758], a traveling salesman was asphyxiated while staying overnight at an auto camp as the result of leaving a gas heater burn overnight and failing to provide ventilation. In reply to the contention that such conduct was so unreasonable and unauthorized as to remove him from the scope of his employment, this court said:

" 'It is practically impossible to distinguish this contention from a claim that the death of the employee was caused by his negligence. We must conclude that petitioner refrains from admitting this fact because it is so well known that negligence of the employee is no defense to a compensation claim of the kind presented in this case.' . . . It is worthy of note that by the weight of authority, even the fact that an injury was received by an employee while violating an instruction or rule of this employer, does not necessarily prevent the injured employee from recovering on the ground that the injury did not arise out of or occur in the course of the employment. (See cases collected: 119 A.L.R. 1409; 83 A.L.R. 1211; 58 A.L.R. 198; 26 A.L.R. 166; 23 A.L.R. 1161.) ' '

The petitioners here in support of their position rely mainly on two cases, *Dalsheim* v. *Industrial Acc. Com.,* 215 Cal. 107 [8 P.2d 840] and *Williamson* v. *Industrial Acc. Com.,* 177 Cal. 715 [171 P. 797]. In the Dalsheim case, an award of compensation to an employee was annulled on the grounds that the injury did not arise out of and in the course of his employment where it appeared that an employee was injured when he, during the lunch hour, intentionally threw a lighted cigarette and then a flaming piece of paper into cleaning fluid to show his coworkers that the liquid was noninflammable. The award was annulled on the grounds that the injury was

the result of "horseplay" or "skylarking." Whatever the merits of the respondent commission's contention that this case has been impliedly overruled by *Pacific Emp. Ins. Co.* v. *Industrial Acc. Com.*, 26 Cal.2d 286 [158 P.2d 9, 159 A.L.R. 313], it is clear that no inference of authorization by the employer could have arisen on the facts before the court in that case.

In the Williamson case, *supra,* the court held that death sustained in the cleaning of a lightwell which was outside the usual scope of an employee's duties was not within the course and scope of her employment where it appeared that she had been warned of the dangers by a fellow employee, and with full knowledge of the dangers, she embarked on a course of conduct solely calculated to please her paymaster although specifically told it was not one of her duties. Whether this case is still the law is not necessary to decide because here Miguel clearly had no knowledge of the dangers inherent in his actions. Suffice it to say that in view of the language in *Associated Indem. Corp.* v. *Industrial Acc. Com., supra,* the holding in the Williamson case should be limited to its precise facts, particularly in view of the earlier court's own language that the case was decided in "the formative period of the law relating to industrial accident cases," and "must be decided upon its own peculiar state of facts."

Finally, it might be noted that there is no question of wilful misconduct presented in view of the absence of "no smoking" rules by the employer and Miguel's lack of knowledge of the danger involved in what he was doing. Both respondents and petitioners seem to concede that there is no issue of wilful misconduct involved.

For the foregoing reasons the award is affirmed.

Peters, P. J., and Knight, J., concurred.