[Civ. No. 1760. Fourth Appellate District.—January 10, 1936.]

A. J. TOROSIAN et al., Petitioners, v. INDUSTRIAL ACCIDENT COMMISSION and BENJAMIN HIGASHI, Respondents.

Smith, Southwell & Smith, Hebard Smith and R. P. Wise-carver for Petitioners.

Everett A. Corten for Respondents.

BARNARD, P. J.—Petitioners seek to have annulled an award of the Industrial Accident Commission in favor of respondent Benjamin Higashi.

Higashi, with another employee of the petitioners, was assisting one of the petitioners in washing the wheels of a truck preparatory to repainting the same. In doing this work a small can of gasoline had been used and small quantities of gasoline had been spilled on the pavement. When they were about through with this work Higashi offered the other employee a cigarette and took one himself. He struck a match, lit the other cigarette and then lit his own. While lighting the other cigarette Higashi drew the match slightly away so that the other employee had to follow the flame in order to get a light. Shortly thereafter the other employee punched Higashi in a friendly way and Higashi punched or shoved back in the same spirit. At some time during this proceeding Higashi dropped the match, which ignited the gasoline on the pavement and the flame spread. Higashi kicked over the quart can of gasoline thereby splashing portions of it on his trousers which ignited and burned him, causing the injuries in question.

The respondent Commission found that the injuries to Higashi arose out of and in the course of his employment and made a special finding as follows: "Although the ap-

plicant and a co-worker had, immediately preceding said injury, engaged in playful acts, said injury was not proximately caused by said playful acts, but it, the said injury, was proximately caused by the applicant's discarding of a burning, or partially burning match, with which he, the applicant, had lit a cigarette for himself and said co-worker, which match fell to the ground and ignited gasoline, which gasoline had fallen there while the applicant and said co-worker were doing work in the course of their employment.'' The petitioners contend that these findings are entirely without support in the evidence and that it conclusively appears that Higashi suffered these injuries as a result of his own ''skylarking'' or ''horseplay'' and that, therefore, the injury did not arise out of and in the course of his employment.

Petitioners particularly rely on the case of *Dalsheim* v. *Industrial Acc. Com.*, 215 Cal. 107 [8 Pac. (2d) 840], which is claimed to be almost analogous to the instant case. In that case the employee intentionally tossed a piece of burning paper into a bucket of cleaning fluid for the purpose of frightening a fellow employee. It was there held that this act constituted a complete departure from the employment and that this act, outside of the scope of the employment, caused the injury.

The situation here is somewhat different. There was no intentional lighting of the gasoline. It does not even appear that Higashi was aware that any of the gasoline was on the pavement. The dropped match which ignited the gasoline was lighted in the process of smoking, a permissible act which was not, in itself, a departure from the scope of the employment. The scuffling occurred after the match was lit and, whether it preceded or followed the dropping of the match, the same could not be said with any certainty to have been alone responsible for the ignition of the gasoline. The original lighting of the match was done within the scope of the employment and it does not conclusively appear that the dropping of the match and the subsequent injury were proximately caused by the subsequent scuffling, even if it could be said that the latter constituted a definite departure from the employment. If the match was dropped before the playful blows were exchanged they had nothing to do with the injury. If it was dropped during the scuffling these acts may have had something to do with the injury but the injury was still con-

nected with the act of lighting the match which originated in the course of the employment. It cannot, therefore, be certainly said that the injury arose by reason of an act which was entirely apart from the scope of the employment.

Not only is no clear-cut distinction possible whereby it may be positively said that the injury arose out of a departure from the employment but the evidence justifies an inference, at least, that the match was dropped before the scuffling began. Higashi testified as follows:

"Q. How did the accident happen?

"A. We were just about through washing the wheels; in fact, we were both working on the last wheel. After we finished we both lit a cigarette. I had the match in my hand and after I lit his cigarette I lit mine and dropped the match on the pavement there.

"Q. And was there gasoline on this pavement?

"A. Yes, around there.

"Q. And that became ignited?

"A. Yes.

"Q. And you suffered burns of your leg, is that correct?

"A. Yes. . . .

"A. Why, I remember offering him a cigarette and I took one myself, and naturally I struck the match and when he was trying to get the cigarette lit, I drew the match away, and naturally he had to follow the flame. I finally let him have the light, lit mine, and while doing that he just punched me and I punched back. I don't know exactly what occurred there, but I know I dropped the match on the pavement.

"Q. Do you recall having the match in your hand when you were fooling with each other, or was that fooling done after?

"A. I believe I threw the match down before we started."

Assuming that other inferences from the evidence are possible, it cannot be said that they must necessarily be drawn therefrom. The question was one of fact for the Commission and the evidence, with inferences that might reasonably be drawn therefrom, supports the findings made.

The award is affirmed.

Marks, J., and Jennings, J., concurred.

An application by petitioners to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on March 9, 1936.