[Civ. No. 11298. Second Appellate District, Division One.—August 27, 1937.]

VELMA M. MARTIN, Respondent, v. JOSEPH LEATHAM et al., Appellants.

 

Hickcox & O'Connor, Frank P. Doherty and William R. Gallagher for Appellants.

Dempster & Dempster and J. H. Creighton for Respondent.

YORK, J.—The facts out of which this controversy arose are as follows: Defendant Leatham, as operator of Patiner Pavilion, a skating rink located in the city of Los Angeles, made an agreement with defendant Walworth, the owner and proprietor of Walworth's Detective Service, by which the latter was to furnish operatives to act as special officers at the skating rink and there to take tickets and to keep order. At 9:30 in the evening of October 26, 1935, defendant Gold was acting as special officer in pursuance with above-mentioned agreement and was then on duty at the skating rink.

It appears that one Sam Nen had purchased a ticket of admission to the rink early in the evening of October 26th, at which time he had been told that he was not to go in and out of the rink without purchasing another ticket. Notwithstanding this warning, he left the rink and returned later in the evening when defendant Gold was on duty, and attempting to enter the rink by proceeding through a small hallway directly to the door which gave admittance to the rink, he was prevented from doing so by defendant Gold. The two men engaged in a scuffle in the hallway, Gold pushing Nen out upon the sidewalk. During this time Lester Willard Wynkoop was standing talking to two friends in front of a cafe twenty or thirty feet west of the entrance to the rink. He made the remark that he guessed he had better go over and try to stop the fight; whereupon he did walk over to the fighting men, stepped between them and pushed Gold back into the hallway. Gold then drew his gun and retreated into the hallway with Wynkoop in pursuit. Immediately thereafter four shots were heard, and Nen entered the hallway and pulled Gold out upon the sidewalk, at which time Gold was holding his gun in his hand. Wynkoop, who was unarmed, was found lying in the hallway suffering from a bullet wound, from the effects of which he later died.

This action in damages was brought by the mother of said Wynkoop, who recovered a judgment for $3,000 against all three defendants. It is from such judgment that this appeal is prosecuted.

Appellant's first point is that the complaint does not state facts sufficient to constitute a cause of action against defendants Leatham and Walworth. In support of this contention, they cite the case of *Ross* v. *Goins,* 51 Cal. App. 412 [197 Pac. 132], which holds that a general allegation of agency is wholly insufficient to charge a principal with liability for the agent's wanton and malicious acts, but that it must be averred that the principal authorized or ratified them. The holding in the cited case is predicated upon section 2339 of the Civil Code, to wit: "A principal is responsible for no other wrongs committed by his agent than those mentioned in the last section, unless he has authorized or ratified them, even though they are committed while the agent is engaged in his service."

However, we are inclined to the belief that section 2338 of the Civil Code is applicable to the facts presented by the case now before us. Said section reads as follows: "Unless required by or under the authority of law to employ that particular agent, a principal is responsible to third persons for the negligence of his agent in the transaction of the business of the agency, *including wrongful acts committed by such agent* in and as a part of the transaction of such business. . . . " (Italics ours.) This section has been construed to extend the responsibility of the principal to all wrongful acts committed by the agent within the scope of his employment. (*Johnson* v. *Monson,* 183 Cal. 149 [190 Pac. 635].) In the cited case it is stated at page 151, quoting from *Otis Elevator Co.* v. *First Nat. Bank,* 163 Cal. 31, 39 [124 Pac. 704, 41 L. R. A. (N. S.) 529] : " 'It is the general doctrine of the law, as it is our statutory rule, that a principal is liable to third parties not only for the negligence of its agent in the transaction of the business of the agency, but likewise for the frauds, torts or other wrongful acts committed by such agent in and as a part of the transaction of such business. (Story on Agency, sec. 452; Shearman & Redfield on Negligence, sec. 65; Civ. Code, sec. 2338.)' '' The court then says: "The situation is not changed by the fact that the

court finds the assault to have been malicious and wilful. Under some circumstances the malicious or wilful character of the agent's act is material in determining whether or not the act was committed in the course of his employment . . . if it appears that the tort was in fact committed by the agent in the course of his employment, the employer is not relieved of his necessary responsibility by its malicious or wilful character. In the present case it appears plainly that the assault was committed by the bartender as a means to compel the plaintiff to cease the noise he was making in the saloon, that is, as a means of performing the bartender's duty of keeping order." Again, in *Ruppe* v. *City of Los Angeles*, 186 Cal. 400, at 402 [199 Pac. 496], it is said: "But even if the act be malicious or wilful and yet be done in furtherance of the purpose of the servant's employment, the master is liable." It was further held in the Ruppe case, *supra*, that "The rule is elementary that a master is responsible for the acts of his servant done in the course of his employment, even though those acts be unauthorized or contrary to the master's explicit instructions. As between the master and third persons, the acts of the servant done as a part of the doing of that which he is employed to do are as if done by the master himself, *and the question of authority* as between the master and servant to do the particular acts is quite immaterial." (Italics ours.) See, also, *Hiroshima* v. *Pacific Gas & Elec. Co.*, 18 Cal. App. (2d) 24 [63 Pac. (2d) 340].

In the case before us the complaint alleged that "at all times herein mentioned, the defendant, Joseph M. Leatham, was and still is doing business under the fictitious style and name of Patiner Pavilion Skating Rink . . . the defendant Floyd W. Walworth was and still is doing business under the fictitious style and name of Walworth's Detective Service . . . the defendant Harry J. Gold was and still is an employee or agent of the defendant Floyd W. Walworth, and acted as an operative for any customers of the Walworth Detective Service. That prior to the 26th day of October, 1935, the defendant, Joseph M. Leatham, employed the defendant, Floyd W. Walworth, to protect the Patiner Pavilion by use of the operatives of the said Floyd W. Walworth, and that said employment continued through the 26th day of October, 1935, and thereafter." These allegations were admitted by the answer.

It was further alleged in the complaint that "on or about the 26th day of October, 1935, at Patiner Pavilion located at Slauson and Main Streets, in the City of Los Angeles, . . . defendant Harry J. Gold, *in the course and scope of his said employment, negligently, carelessly and wantonly and without good or any cause shot the said Lester Willard Wynkoop,* inflicting such serious wounds upon the body of the said Lester Willard Wynkoop, that the said wounds caused the death of the said Lester Willard Wynkoop almost immediately". These allegations were denied, but the trial court found upon conflicting evidence that "all of the allegations of the complaint are true, except the allegation as to the amount of damages. That all of the denials and allegations in the answer of the defendants are untrue." (Italics ours.) We are of the opinion that the allegations of the complaint are sufficient to state a cause of action against both defendants Leatham and Walworth, and that the use of the word "wantonly" instead of the words "wilfully and maliciously" is immaterial, in view of all the facts and circumstances shown to have existed at the time of the altercation.

■ Appellants next contend that the evidence is insufficient to support the finding of the court that Harry J. Gold at the time of the killing was the agent of defendant Leatham. As we have already stated, the answer of defendants, by its failure to deny them, admitted the allegations in the complaint that defendant Gold was an employee of the defendant Walworth and acted as an operative for any customers of the Walworth Detective Service, and that defendant Leatham employed defendant Walworth to protect the Patiner Pavilion by use of operatives of the detective agency. Defendant Walworth testified that under his agreement with defendant Leatham he sent defendant Gold to the skating rink to maintain law and order. Defendant Leatham testified that "he told the Walworth Detective Agency that he wanted a man to come to the skating rink and stay in the vestibule and take tickets at the door and to keep order; that . . . he knew Mr. Walworth and knew that he ran a strictly first class place and depended upon Mr. Walworth to send the proper kind of man; that the same man was not on duty all the time; that there was a number of different men; that (he) Leatham had nothing to say about who should be sent". De-

fendant Gold testified that "he was employed by the Walworth Detective Agency . . . that his job at the skating rink was to maintain law and order and to take tickets; that he was not to admit anyone without a ticket; . . . that Mr. Leatham never gave him orders of that kind; that Mrs. Leatham was the only one that gave him those orders". This evidence was sufficient to support the finding objected to.

■ Appellants next complain that the evidence is insufficient to support the finding that Harry J. Gold wantonly killed Lester Willard Wynkoop as contained in the first finding of fact made by the court. Defendant Gold admitted the shooting, but maintained that he acted in self-defense. There were no eye-witnesses to the tragedy and, necessarily, the evidence upon this issue was extremely conflicting. However, from a careful examination of the evidence set out in the bill of exceptions, we are convinced that there was sufficient evidence to support the finding objected to. Suffice to say that the trial court having resolved this conflicting evidence in favor of the plaintiff, this court has no power to interfere.

■ In view of the facts hereinbefore set forth, together with the announced attitude of the trial judge which was dependent upon his personal knowledge and observations in other spheres of activity to which he specifically referred in making his ruling with reference thereto, it becomes obvious that whatever merit (if any) may obtain with reference to appellants' additional point that the court erred in preventing defendants from showing by expert testimony the intoxicated condition of decedent, the result of the ruling was not prejudicial to the defense. ■ Likewise it is concluded that the trial court committed no error in sustaining the objection of the plaintiff to the admission in evidence of the map of the premises where the shooting occurred, for the reason that the offered map was one which theretofore had been used on the trial of another action and bore numerous marks and figures that were placed thereon at said trial and which were not relevant to the facts in the instant case.

The judgment is affirmed.

Houser, P. J., and Doran, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on September 23, 1937, and an application by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on October 25, 1937.