[Sac. No. 5908. In Bank. May 25, 1948.]

PHOENIX INDEMNITY COMPANY, Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION and VIRGINIA HAMILTON, Respondents.

W. N. Mullen for Petitioner.

T. Groezinger and John A. Rowe, Jr., for Respondents.

EDMONDS, J.—The Industrial Accident Commission awarded a death benefit to the widow of Marion Robert Hamilton, who was killed when the airplane he was flying crashed into a power line. By writ of review, Phoenix Indemnity Company, the insurance carrier of his employer, challenges the commission's jurisdiction to make the award.

The findings of the commission are attacked by the insurer upon the sole ground that there is no evidence whatever tending to prove death arising out of employment, as required by section 3600 of the Labor Code. Although the accident may have occurred during the course of Hamilton's employment, the argument runs, it did not arise out of such employment. More specifically, the act of Hamilton in taking his daughter for a ride was personal in nature, the employer loaned the plane to him for personal use, and the venture was not reasonably incidental to his employment.

The evidence showing the scope of Hamilton's employment and the use of the plane at the time of the accident is quite brief. He was employed by Herbert Weggers, doing business as Weggers Airplane Seeding and Dusting Company. In addition to providing crop dusting and seeding service, Weggers

offered instruction in the handling and flight of airplanes. Hamilton was the designated flight instructor.

On the day of the accident, Hamilton had been continuously engaged since early morning in taking students aloft for instruction. He was required to be on duty until 5 p. m. or sundown. About an hour before that time, Mrs. Hamilton went to the airport with their 12-year-old daughter. Hamilton said to the little girl, ''Come on, I will take you up on your orientation ride and see what kind of flier you are going to make.'' The father and daughter proceeded to the office and Hamilton asked Weggers if he might ''use an airplane to take his daughter for a ride.'' Weggers replied, ''Surely.'' The accident occurred soon after Hamilton and the girl took off in the plane.

Hamilton's daughter had never been listed as a student and no arrangements had ever been made regarding instruction for her. Weggers testified that the regulations of Civil Aeronautics Authority do not permit the licensing as pilots of persons under 17 years of age, but he said that sometimes younger persons are taken up in the air for the purposes of determining whether or not they can learn to fly.

According to the widow's testimony, she and her husband had talked about giving their daughter instruction which would qualify her to pilot an airplane. She did not know of any arrangements her husband may have made with his employer, but she said, ''He always paid for the gas or something. He didn't just take the plane.''

There is other testimony tending to prove Hamilton's intention to provide instruction for his daughter in the use of airplanes. Fred Moedlinger quoted Hamilton as stating that it was his ambition to make a pilot of his daughter. He could not recall whether Weggers was present when such statements were made.

An employee of Weggers testified that he was in the office when Hamilton asked for the use of the plane. This witness did not hear Hamilton mention ''an orientation ride,'' nor say anything about paying for it. But there is evidence of a conversation after the crash in which Weggers said that he was receiving ''remuneration'' from Hamilton for the use of the plane. And it appears that the ship in which the accident occurred was one which Hamilton had used earlier the same day to train students.

Upon this evidence, the commission found that the death of Hamilton was not caused by any injury arising out of and in the course of his employment. Thereafter, upon petition of the applicant, it granted a rehearing and, without taking additional evidence, upon a reexamination of the record, the findings were set aside and a death benefit awarded upon a finding that Hamilton "sustained injury arising out of and in the course of (his) employment which caused his death. . . ." The employer and insurance carrier then obtained a rehearing of the order granting the first rehearing and the decision on rehearing. At the supplemental hearing, the only witness appearing was Weggers, who testified that on a number of occasions his instructors had taken young people aloft in his planes. Some of these flights were paid for by the prospective student. Others were without compensation, Weggers stated, but to take a person aloft without charge the pilot was required to obtain his permission. He explained that free rides were given under several different circumstances; "sometimes a donation, or like selling an airplane, or something like that you know." Other testimony by him was that in the past youngsters had been "taken up with the idea that maybe in four or five years they would be a student for airplane instruction." But there had been no conversation with him, he said, in regard to any intention that the Hamilton girl should be a student.

Following this rehearing, the commission ordered that the decision on the former rehearing be affirmed and adopted as its final determination. The insurer then brought the present proceeding.

The findings of the commission will not be disturbed upon appeal where they are supported by substantial evidence, or by inferences which may fairly be drawn from the evidence. (*Associated Indemnity Corp.* v. *Industrial Acc. Com.*, 18 Cal.2d 40, 42 [112 P.2d 615]; *Drillon* v. *Industrial Acc. Com.*, 17 Cal.2d 346, 350 [110 P.2d 64]; *Schaller* v. *Industrial Acc. Com.*, 11 Cal.2d 46, 50 [77 P.2d 836]; *Hillen* v. *Industrial Acc. Com.*, 199 Cal. 577, 580 [250 P. 570].)

As tending to prove a fatal accident arising out of and in the course of the employment (see Lab. Code, § 3600), there is evidence from which it reasonably may be inferred that the facilities offered by Weggers to the public included pretraining orientation flights as well as those which were a

part of the regular course of instruction. At times, children were taken on orientation flights for the purpose of determining the reactions of the child to air travel and his probable aptitude for eventual pilot training. On occasions, such trips had been made although it was known that the child could not enroll for instruction until a later time. Flights of that kind were made, more or less regardless of the age of the child. A charge was made for some of them; other flights were given without compensation. It was Hamilton's duty, as the flight instructor, to pilot the plane on these occasions. Mrs. Hamilton, therefore, made out a prima facie case of death arising out of and in the course of employment.

Evidence in three particulars is relied upon by the insurer to rebut this prima facie case: the conversation between Hamilton and Weggers just prior to taking off, the age of the child, and the fact that she was Hamilton's daughter. It is argued that Hamilton's question, "Can I have your plane," meant that he was requesting the plane for his own use, thereby stepping out of the course of his employment. But it is equally probable that Hamilton asked the question to determine whether or not Weggers had another use for the plane at that time, or to ascertain its availability for further student flights in the scope of his employment. Although previously on the day of the accident Hamilton had instructed students in the plane used to take up his daughter, it was then on the ground after a flight for another purpose.

The age of the daughter, says the insurer, is a further indication that the flight was not in the course of Hamilton's employment. But here again, the commission could fairly infer that because of Hamilton's ambition and desire eventually to qualify her as a pilot she was a prospective student for instruction. Also, considering the more or less general practice of Weggers to take youngsters on orientation flights for the purpose of determining their aptitude, as a matter of law it may not be said that the purpose of the fatal trip had no connection with pilot training.

The relationship between Hamilton and the child is also not conclusive as indicating that his death was caused by an accident occurring outside of the scope of his employment. In the absence of this relationship, there is evidence which would support the award of a death benefit, and the relationship alone does not necessarily require a contrary determination.

■ Also, although it may be conceded that Hamilton was deriving a personal benefit from the flight by determining his daughter's aptitude for flying, this "does not *per se* bring him without the purview of the compensation law . . . 'The true rule . . . is that the injury is compensable if received while the employee is doing those reasonable things which his contract of employment expressly or impliedly authorizes him to do.' " (*Pacific Indemnity Co.* v. *Industrial Acc. Com.*, 26 Cal.2d 509, 513 [159 P.2d 625] ). ■ Benefits to the employer, or to the employee, are not mutually exclusive, and "where the employee is combining his own business with that of his employer, or attending to both at substantially the same time, no nice inquiry will be made as to which business he was actually engaged in at the time of injury, unless it clearly appears that neither directly or indirectly could he have been serving his employer." (*Lockheed Aircraft Corp.* v. *Industrial Acc. Com.*, 28 Cal.2d 756, 758-9 [172 P.2d 1].) It is not material whether the commission believed the testimony that the employer was to receive "remuneration" for the particular flight. If it accepted that evidence, there was proof of direct benefit to him. If the commission disregarded that testimony, it reasonably may be said that the flight was made in accordance with the employer's custom to provide trial trips without charge for the purpose of building up his business.

The award is affirmed.

Gibson, C. J., Shenk, J., Carter, J., Traynor, J., and Spence, J., concurred.

SCHAUER, J.—I dissent. I find the evidence, viewed fairly, impartially and realistically, inadequate to prove that the accident which occasioned the employe's death occurred while the employe was "performing service growing out of and incidental to his employment" or while he was "acting within the course of his employment." (See Lab. Code, § 3600.) Accordingly I would annul the award.