[Civ. No. 8116.   Third Dist.   Jan. 14, 1952.]

INDUSTRIAL INDEMNITY COMPANY, Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION and GAYLE LOUISE SOWARD, Respondents.

Leonard, Hanna & Brophy for Petitioner.

Edmund J. Thomas, Jr., T. Groezinger, Robert Ball, M. O. Edison, Charles C. Boynton and Ira S. Solomon for Respondents.

VAN DYKE, J.—This is a proceeding through writ of review whereby it is sought to annul an award of the respondent Industrial Accident Commission. The facts may be summarized as follows: Beaster and Cooper Logging Company was engaged in logging operations in Reeves Canyon, 12 to 15 miles south and west of Willits in Mendocino County. Roland Soward had been in its employ a number of months. He was a mechanic and because he was given to drinking sprees which disabled him from working he was employed and paid on an hourly basis from time to time as he was in condition to work and his help was needed. He and Mary Soward lived at an auto court at Willits. On May 12, 1949, responsive to a request of Cooper, field manager of Beaster and Cooper Logging Company, that he repair a Dodge power

wagon being used in the company's work, Roland and Mary Soward traveled from their home to Reeves Canyon. He and another mechanic removed the broken unit from the power wagon and loaded it into Roland's automobile. It was Mary's birthday and Cooper agreed that Roland could take the rest of the day off to celebrate the event with Mary. On many occasions Roland had been told to obtain needed spare parts for repair of the employer's equipment, and Cooper on this day told him to go to Ukiah and see if the necessary parts to repair the power wagon could be obtained there. Roland and Mary proceeded to Ukiah and unsuccessfully sought the needed parts, then returned to Willits where Roland made further inquiries. Being unsuccessful, he, with Mary, went back to their home. Later in the afternoon they went to Calpella, which is south of Willits, had dinner, drank and danced, and then came back to Willits and did additional drinking at a bar close to their home. There Cooper met Roland between 12 midnight and 1 a. m. on the morning of May 13th. Roland told Cooper he thought the needed parts could be obtained at Laytonville and proposed that he go to Laytonville the next day to get them if they were to be had. He tried to borrow $10 from Cooper to pay for the parts if found and Cooper refused to advance the money, but he did say, ''If you want to go to work you pick up my father-in-law [a partner in the business] and go up and get the parts tomorrow, if you want to go to work.'' Cooper testified that he spoke as he did because there was nothing to be gained by giving Roland money to buy parts when he was on a drinking bout as he would spend the money to further his drinking. He testified that he would not pay Roland $2.50 an hour to go about looking for parts. Cooper's reason for telling Roland to take Cooper's father-in-law, Beaster, along was so that Beaster could pay for the parts if obtained. Cooper further said to Roland: ''If you know where there is a part, tomorrow, any time you get around to it, pick up my father-in-law and take him up there and get it, and there is no use just going any place unless you take him with you in the shape you are in to get the part.'' Roland answered, ''Well, as soon as I get organized around a little bit, I will come back to work, and come and get that part, and get it fixed for you.'' Cooper testified that Roland was intoxicated at that time. He further testified that Roland said ''I will be all right in the morning. I will be out to work and get the stuff.'' Cooper replied ''Well,

if you feel all right, and you think you can make it, you pick him up and get me the part. Be sure to pick him up because you will have to get the money to get it.'' The next morning around 8 o'clock Roland and Mary, without contacting Beaster, went to Laytonville, where Roland inquired at a garage for the parts, which he did not succeed in getting. They then started back to Willits. Mary was driving, and on an S curve about two miles north of Willits the car left the road and Roland was killed. He left a minor daughter, not Mary's child, by a marriage that had been terminated by divorce and it was this minor who applied for an award under the act and to whom there was granted the award hereby sought to be annulled.

Petitioner contends, first, that the death of Roland did not arise out of and in the course of his employment. It is argued that an employer may so limit the scope of an employee's duties that if he steps outside the scope of those duties and undertakes to perform work he is not employed to do he is not acting within the scope of his employment. (*Auto Lite Battery Corp. of Calif.* v. *Industrial Acc. Com.*, 77 Cal.App.2d 629, 631 [176 P.2d 62]; *Industrial Indem. Exch.* v. *Industrial Acc. Com.*, 86 Cal.App.2d 202 [194 P.2d 552].) Petitioner contends that in this case the evidence shows without conflict that when he went to Laytonville without taking Beaster along, as directed by Cooper, deceased went outside the scope of his employment in violation of a condition attached to that employment. In support of this the nature of deceased's employment, as being often interrupted and on a basis of pay for actual hours worked, is urged as supporting petitioner's views. We think petitioner's contentions cannot be sustained. ■ ''Whether an employee's injury occurred in the course of his employment is a question of fact to be determined in light of the circumstances of the particular case.'' (*Industrial Indem. Exch.* v. *Industrial Acc. Com.*, 26 Cal.2d 130, 136 [156 P.2d 926].) ■ ''The findings of the commission will not be disturbed on appeal where they are supported by substantial evidence, or by inferences which may fairly be drawn from the evidence.'' (*Phoenix Indem. Co.* v. *Industrial Acc. Com.*, 31 Cal.2d 856, 859 [193 P.2d 745].) ■ One of the duties sometimes assigned to deceased was that of locating needed parts for repair of the employer's equipment and it appeared from the evidence, in addition to what we have

heretofore stated, that deceased was useful in securing them by reason of his acquaintance with persons about the country who might have such parts. Cooper, when deceased proposed that he go to Laytonville to secure needed parts, told him to do so if he felt up to it on the following morning, thus leaving it to deceased to determine his ability to go on the errand. True, he told him to pick up Beaster, but he did not expressly make it a condition precedent to the authorization to make the trip. In view of all this we think that the commission could fairly infer from the evidence that Cooper had authorized the trip to Laytonville; that deceased had made the trip pursuant to that authorization and that his failure to take Beaster was not such a violation of orders as to put him outside the scope of his employment while doing so. Notwithstanding Cooper's stated purpose in requiring Beaster to go along was that money would be available to purchase the parts if they were found, it cannot be said that the employer's business on which deceased went to Laytonville could not have been and was not being furthered or that the violation of Cooper's direction as to taking Beaster along took deceased out of the sphere or scope of his employment. We think if Cooper had really intended to make the violated order a condition precedent to the authorization of the deceased to go to Laytonville he would have plainly said so when he authorized the trip.

█ Petitioner further contends that the death of Roland was caused by his intoxication. This defense was an affirmative one and the burden was on petitioner to establish it in the proceedings before the commission. █ On the subject of intoxication there seems no doubt from the record that both Mary and Roland had done considerable drinking during the birthday celebration and up to the time Cooper talked with Roland at Willits concerning the prospective trip to Laytonville. Mary testified that the two stopped drinking around 2 to 2:30 a. m. that night, went home and to bed and that so far as she knew deceased had no drinks thereafter until the accident at about 10:30 the next morning and that she, Mary, had only one drink. As opposed to this, the laboratory technician at the hospital to which the injured pair had been taken took blood samples and analyzed the alcoholic content thereof. He testified as to the percentage of alcohol in the blood of both Mary and deceased and from his testimony and that of other experts,

based on his quantitative analysis, it appeared that Mary would be considered sufficiently under the influence of liquor to incapacitate her as a safe driver. One witness went so far in respect of Roland's condition as to say that it amounted to what in lay language would be termed "dead drunk" or "gutter drunk" and that he must have been no better than semiconscious. There were no witnesses to the accident save Mary. She was severely injured about the head and said that she had no memory as to the actual happening of the accident. Labor Code, section 3600(d), establishes as one of the conditions of compensable injury that it must not have been caused by the intoxication of the injured employee and so the question here is whether or not Roland was intoxicated at the time of the injury and whether or not such intoxication, if it existed, was the cause of his injury. There is apparent conflict between the testimony of Mary and that of the analyst and the other expert witnesses. As to this, petitioner argues that the conflict is apparent only and in reality the testimony contrary to Mary's is credible and factual to a point rendering her testimony incredible. Certainly it is extremely difficult to credit Mary's testimony without also believing that the analyst's work was improperly and inaccurately done or that the conclusions drawn by the expert witnesses from the presence of alcohol which he found in the blood of Mary and Roland were inaccurate to a point approaching deliberate falsehood. But, even so, the conflict is real, not merely apparent, and we cannot say that the trier of fact has not properly resolved the same. Further than this, the question of causation was, as it generally is, a question of fact. The burden was upon petitioner to establish that the death of Roland was caused by *his* intoxication and we think that the commission's finding that this was not so is substantially supported. It was not testified that Mary could not have properly driven the car, and it is not made to appear as a matter of law that she did not properly drive the car. Therefore, the finding of the commission is sustained.

Petitioner suggests that by amendment to section 5952 of the Labor Code, enacted in 1951, the scope of review has been broadened. The amendment, as added to the existing section, provides that the review may extend to determining from the whole certified record that the award was not supported by substantial evidence. Assuming that a change

was thus made in the existing decisional rule, we think the record meets the substantial evidence test so provided.

The award is affirmed.

Adams, P. J., and Peek, J., concurred.

Petitioner's application for a hearing by the Supreme Court was denied March 13, 1952.