[Civ. No. 20282.   Second Dist., Div. Three.   Dec. 23, 1954.]

ALBERT DeMIRJIAN et al., Appellants, v. IDEAL HEAT-
ING CORPORATION (a Corporation), Respondent.

Lane & McGinnis, Felix H. McGinnis, McBain & Morgan and Irving E. Tarson for Appellants.

John W. Preston, Bordon & Bordon, John W. Preston, Jr., and Parker, Stanbury & Reese for Respondent.

VALLÉE, J.—Plaintiffs appeal from a judgment in favor of defendant Ideal Heating Corporation, referred to as defendant, entered on a directed verdict. The action is for property damage resulting from a fire alleged to have been caused by the negligence of Anthony Lupella, an employee of defendant. The facts are not in dispute.

On April 12, 1946, plaintiffs owned a one-story double building in Los Angeles. One half of the building was leased to and occupied by defendant which was engaged in the manufacture of floor and wall furnaces and heaters. The other half was occupied by plaintiffs who were engaged in the manufacture of lamps. Defendant had about 25 employees. At 2:30 p. m. on that date the fire was started, resulting in total damages to plaintiffs in the stipulated sum of $122,081.

At the time of the fire and for several months prior thereto, Lupella had been an employee of defendant. Defendant had given orders prohibiting smoking on the floor of the shop, but had permitted its employees to smoke in the washroom. It was Lupella's practice to go to the washroom four or five times a day to smoke. The day before the fire while working in defendant's paint booth he had taken the fluid out of his cigarette lighter and had painted the lighter. Defendant, to Lupella's knowledge, maintained spatter thinner, a highly volatile, inflammable, and dangerous substance, in a 50-gallon drum next to the paint booth and adjacent to an aisle used for access to the washroom—in a portion of the shop where smoking was prohibited. The drum was at an angle of about 40 or 45 degrees. There was a spigot in the drum for releasing the thinner. It was not the spring-closing type of outlet to which you have to apply pressure on the handle to allow the outlet to remain open and when the pressure is released

the outlet is automatically closed. There was a "drip can" about 12 inches in diameter under the spigot of the thinner drum. There were no signs adjacent to the drum. There was a fire extinguisher near it. There were at least two more fire extinguishers on the floor; the record does not clearly disclose their location. The thinner was used by the painters more or less continuously. Some paint was kept behind the paint booth.

About 2:30 p. m. on the day of the fire, Lupella left his work station and proceeded to the washroom to use its facilities and to smoke. Having no matches and wishing to smoke while he was in the washroom, he stopped at the thinner drum to fill his lighter with fluid. There were about 20 or 25 gallons of thinner in the drum. Lupella testified: "[W]e were not allowed to smoke on the floor, so every time I wanted to smoke I went up to the washroom. The day before the fire I had my cigarette lighter painted, and I took the juice out of it. Well, I wanted to go for a smoke, and I wanted to put some juice in the lighter so I can smoke a cigarette, because I didn't have any matches, so what I did was I went to the thinner drum, and I opened up the spigot a little, just dripping; so I turned the lighter upside down and took the cap off; and then I accidentally pressed the button, and it sparked, and it ignited the thinner, so I got hysterical and I dropped the lighter in the pan underneath the spigot and it started to blaze, and I yelled, 'Fire.'

"So Mr. Pardee, the shop foreman, he came over with a fire extinguisher, and he asked me to shut the spigot off. Well, when I tried to put out the fire, my clothes caught on fire and I got burned, slightly burned on my hand and my legs, and I burned my clothes; and he asked me to hit the spigot, and I couldn't move it with my hand because it was on fire, so I tried to hit it with my foot. When I hit it with my foot, I knocked the spigot off, and then it started flowing more, and it blazed the fire up to the crates, and the crates caught fire, and I ran for a fire extinguisher, and there was no controlling the fire, so they called the fire engines, and Mr. Pardee told me to leave the shop."

After Lupella left the building, an explosion occurred. He had used spatter thinner from the drum before as fluid for his cigarette lighter. He "knew thinner would be best for the lighter." He knew the thinner was a good fuel for his cigarette lighter because he had used it when he was in the Air Force. He remained in the employ of defendant

about two months after the fire, when he voluntarily quit his employment.

Defendant's vice-president testified the thinner was maintained in a drum which was not a safety container and that it had been so maintained for about three years prior to the fire; that it was the duty of all employees to safeguard and preserve the premises; that Lupella's express duties were working on the punch press, a notching machine, in the paint booth, and to do such things as he was instructed to do from time to time.

After plaintiffs rested their case, defendant, without introducing any evidence, moved for a directed verdict on two grounds: 1. Although evidence submitted by plaintiffs was undisputed and without conflict, the facts did not entitle plaintiffs to recover damages from defendant. 2. Upon an appeal from a former judgment in the same "entitled cause, and upon the same or substantially the same facts adduced at the present trial of said cause," the reviewing court "held that said facts were insufficient to support any judgment in favor of the plaintiffs"; that the decision has become final and constitutes the law of the case, "and the plaintiffs are estopped from questioning its correctness and from further prosecuting this action against the defendant." The motion was granted on both grounds. The court directed the jury to return a verdict for defendant. Plaintiffs appeal from the judgment entered on the verdict.

Plaintiffs contend the trial court erred in granting defendant's motion for a directed verdict on either ground. The two grounds will be considered in reverse order from that in which they were made.

The second ground is based on the theory that the decision in *DeMirjian* v. *Ideal Heating Corp.*, 112 Cal.App.2d 251 [246 P.2d 51], constitutes the law of the case and estops plaintiffs from further prosecuting the action. The contention raised on appeal from the former judgment, which was for plaintiffs, was (p. 253) "that the findings of the trial court set forth above do not support a judgment against it [defendant Ideal]." The court held (pp. 253-254): "This proposition is sound and must be sustained. . . . [T]here is a total absence of any finding that defendant Lupella was acting within the scope of his employment or authority at the time he committed the negligent act which was the proximate cause of the damage suffered by plaintiffs. . . . [U]nder the findings of fact of the court in the instant case defendant

corporation was not liable for the negligent act of its co-defendant, and the trial court erred in entering judgment in favor of plaintiff. . . . Judgment reversed.''

The only question presented and necessary for determination on the former appeal and the only question determined was that the findings of fact of the trial court were deficient in one particular and that therefore they did not support the judgment. It was not held that the evidence did not support the findings. All that was decided was that the findings did not support the judgment. ■ A failure to find on a given issue of fact in a prior trial which resulted in a reversal does not establish the law of the case where at the second trial there is a satisfactory finding on that point. (*Hibernia Sav. & Loan Soc.* v. *Farnham,* 153 Cal. 578, 583 [96 P. 9, 126 Am.St.Rep. 129].)

■ The doctrine of the law of the case does not extend to remarks or opinions on questions that are not necessarily before the court or involved in the determination of the cause. (*Millsap* v. *Balfour,* 158 Cal. 711, 714 [112 P. 450].)

■ The statements relied on by defendant in the opinion on the prior appeal concerning the responsibility of defendant to third persons for the negligence of its agent, are mere passing remarks, not necessary to the decision, at best *obiter dicta.* They are not binding as the law of the case and do not bar us from now deciding the question on its merits. (*Hammond* v. *McDonald,* 49 Cal.App.2d 671, 677 [122 P.2d 332].) ■ The effect of the unqualified reversal of the case on appeal was to remand it for a new trial on all the issues presented by the pleadings. (*Odlum* v. *Duffy,* 35 Cal.2d 562, 564 [219 P.2d 785] ; *Riedy* v. *Bidwell,* 93 Cal.App. 202, 205 [269 P. 682] ; *Heinfelt* v. *Arth,* 4 Cal. App.2d 381, 383 [41 P.2d 191] ; 4 Cal.Jur.2d 551, § 666.)

■ Inasmuch as the court on the former appeal did not consider or attempt to determine whether the evidence was sufficient to sustain proper findings, the doctrine of the law of the case does not apply. It was error for the court to direct a verdict for defendant on the second ground.

The next question is whether it can be said, as a matter of law, that Lupella was not acting within the course of his employment at the time he committed the negligent act which was the proximate cause of the damage suffered by plaintiff. Stated in different fashion: Would a verdict for plaintiff have been supported by the evidence?

■ Under the doctrine of *respondeat superior,* an em-

ployer is liable for injury to the property of another proximately resulting from the negligent act of his employee done within the course of his employment. An employer is responsible not only for the negligent act of his employee done within the course of his employment, but also for the wrongful act of his employee committed in and as a part of the transaction of the business of the employer. (Civ. Code, § 2338; *Johnson* v. *Monson,* 183 Cal. 149, 152 [190 P. 635]; *Otis Elevator Co.* v. *First Nat. Bank,* 163 Cal. 31, 39 [124 P. 704, 41 L.R.A.N.S. 529].)

The definitive limits of the phrase "in the course of employment" are uncertain. The determination of what conduct of an employee is within the course of his employment is largely dependent on the facts and circumstances of the particular case. As a general rule whatever is done by the employee in virtue of his employment and in furtherance of its ends is deemed by the law to be an act done within the course of his employment; and in determining whether the employee's conduct was within the course of his employment, it is proper to inquire whether he was at the time engaged in serving his employer. It is not necessary that the employee should have authority to do the particular act which resulted in the injury complained of. (57 C.J.S. 303, § 570d(2).)

Acts necessary to the comfort, convenience, health, and welfare of the employee while at work, though strictly personal to himself and not acts of service, do not take him outside the course of his employment. Cessation of work for eating, drinking, warming himself, and similar necessities are necessary incidents of employment. In these and other conceivable instances the employee ministers unto himself, but in a sense these acts contribute to the furtherance of his work. "That such acts will be done in the course of employment is necessarily contemplated, and they are inevitable incidents. Such dangers as attend them, therefore, are incident dangers. At the same time injuries occasioned by them are accidents resulting from the employment." (*Archibald* v. *Ott,* 77 W.Va. 448 [87 S.E. 791, 793, L.R.A. 1916D 1013]; *Adams* v. *American President Lines,* 23 Cal.2d 681, 685 [146 P.2d 1]; *Elliott* v. *Industrial Acc. Com.,* 21 Cal.2d 281 [131 P.2d 521, 144 A.L.R. 358]; *Brunk* v. *Hamilton-Brown Shoe Co.,* 334 Mo. 517 [66 S.W.2d 903]; 57 C.J.S. 308, § 570d(3).)

A mere deviation by an employee from the strict

course of his duty does not release his employer from liability. An employee does not cease to be acting within the course of his employment because of an incidental personal act, or by slight deflections for a personal or private purpose, if his main purpose is still to carry on the business of his employer. Such deviations which do not amount to a turning aside completely from the employer's business, so as to be inconsistent with its pursuit, are often reasonably expected and the employer's assent may be fairly assumed. In many instances they are the mingling of a personal purpose with the pursuit of the employer's business. ■ In order to release an employer from liability, the deviation must be so material or substantial as to amount to an entire departure. (*Westberg* v. *Willde*, 14 Cal.2d 360, 372-373 [94 P.2d 590].)

■ "[W]here the employee is combining his own business with that of his employer, or attending to both at substantially the same time, no nice inquiry will be made as to which business he was actually engaged in at the time of injury, unless it clearly appears that neither directly or indirectly could he have been serving his employer." (*Lockheed Aircraft Corp.* v. *Industrial Acc. Com.*, 28 Cal.2d 756, 758-759 [172 P.2d 1].) ■ An employee may be acting in the course of his employment even though the act done be a violation of some rule or instruction of the employer. (See *Associated Indem. Corp.* v. *Industrial Acc. Com.*, 18 Cal.2d 40, 47 [112 P.2d 615]; and cases collected 23 A.L.R. 1161, 26 A.L.R. 166, 58 A.L.R. 197, 83 A.L.R. 1211, 119 A.L.R. 1409.) An employee takes with him his human frailties as well as his virtues when he goes to work. (See *Pacific Emp. Ins. Co.* v. *Industrial Acc. Com.*, 26 Cal.2d 286 [158 P.2d 9, 159 A.L.R. 313].)

*Dolinar* v. *Pedone*, 63 Cal.App.2d 169 [146 P.2d 237], says (p. 175) that "mere deviation by an employee from a strict course of duty does not release the master from liability. In order to have such an effect the deviation must be shown substantially to amount to an entire departure."

*Hiroshima* v. *Pacific Gas & Elec. Co.*, 18 Cal.App.2d 24 [63 P.2d 340], held that the defendant's employee was acting in the course of his employment where, while in the act of writing a receipt for a check given by the plaintiff in payment of a bill for electricity, he began a quarrel with the plaintiff and immediately followed it up by an assault on the plaintiff. In that case the court said that acting within the general scope of his employment means while on duty. Hiroshima

has been quoted or referred to with approval in the cases set out in the margin.[1]

In *Carr* v. *Wm. C. Crowell Co.*, 28 Cal.2d 652 [171 P.2d 5], an employee of a general contractor threw a hammer at an employee of a subcontractor, striking him on the head and seriously injuring him. He sued the general contractor and his employee. The trial court granted a motion for a directed verdict as to the general contractor. The plaintiff appealed. On appeal the general contractor contended that his employee was not acting in the course of his employment when he injured the plaintiff, on the ground that the throwing of the hammer did not further the employer's interests as an employer and that his employee could not have intended by his conduct to further such interests. Reversing, the court declared (p. 654): "It is sufficient, however, if the injury resulted from a dispute arising out of the employment. Under the provisions of section 2338 of the Civil Code a principal is liable for 'wrongful acts' of his agent committed 'in and as a part of' the principal's business. 'It is not necessary that the assault should have been made "as a means, or for the purpose of performing the work he (the employee) was employed to do."' . . . The employer's responsibility for the tortious conduct of his employee 'extends far beyond his actual or possible control over the conduct of the servant. It rests on the broader ground that every man who prefers to manage his affairs through others, remains bound to so manage them that third persons are not injured by any breach of legal duty on the part of such others' while acting in the scope of their employment. [Citations.] Such injuries are one of the risks of the enterprise. [Citations.] In the present case, defendant's enterprise required an association of employees with third parties, attended by the risk that someone might be injured. 'The risk of such associations and

---

[1] *Fields* v. *Sanders*, 29 Cal.2d 834, 838 [180 P.2d 684, 172 A.L.R. 525]; *Carr* v. *Wm. C. Crowell Co.*, 28 Cal.2d 652, 654 [171 P.2d 5]; *Maron* v. *Swig*, 115 Cal.App.2d 87, 90 [251 P.2d 770]; *Connell* v. *Clark*, 88 Cal. App.2d 941, 944 [200 P.2d 26]; *Haworth* v. *Elliott*, 67 Cal.App.2d 77, 81 [153 P.2d 804]; *Andrews* v. *Seidner*, 49 Cal.App.2d 427, 430 [121 P.2d 863]; *Transcontinental & W. Air* v. *Bank of America*, 46 Cal.App.2d 708, 713 [116 P.2d 791]; *Stansell* v. *Safeway Stores, Inc.*, 44 Cal.App.2d 822, 824 [113 P.2d 264]; *Lane* v. *Safeway Stores, Inc.*, 33 Cal.App.2d 169, 174 [91 P.2d 160]; *Cain* v. *Marquez*, 31 Cal.App.2d 430, 434 [88 P.2d 200]; *Madsen* v. *Cawthorne*, 30 Cal.App.2d 124, 126 [85 P.2d 909]; *Jameson* v. *Gavett*, 22 Cal.App.2d 646, 651 [71 P.2d 937]; *Martin* v. *Leatham*, 22 Cal.App.2d 442, 445 [71 P.2d 336]; and *Bonetti* v. *Double Play Tavern*, 126 Cal.App.2d Supp. 848, 850 [274 P.2d 751].

conditions were risks of the employment.' [Citation.] Such associations 'include the faults and derelictions of human beings as well as their virtues and obediences. Men do not discard their personal qualities when they go to work. Into the job they carry their intelligence, skill, habits of care and rectitude. Just as inevitably they take along also their tendencies to carelessness and camaraderie, as well as emotional makeup. In bringing men together, work brings these qualities together, causes friction between them, creates occasions for lapses into carelessness, and for fun-making and emotional flareup. Work could not go on if men became automatons repressed in every natural expression. . . . These expressions of human nature are incidents inseparable from working together. They involve risks of injury and these risks are inherent in the working environment.' '' In support of the last statement the court cited among other cases, *Hartford Acc. & Indem. Co.* v. *Cardillo,* 112 F.2d 11, 15 [72 App. D.C. 52], a case involving an issue under the Longshoremen's & Harbor Workers' Compensation Act, and *Pacific Emp. Ins. Co.* v. *Industrial Acc. Com.,* 26 Cal.2d 286, 291 [158 P.2d 9, 159 A.L.R. 313], a case which arose under the Workmen's Compensation Law.

*Fields* v. *Sanders,* 29 Cal.2d 834 [180 P.2d 684, 172 A.L.R. 525], was an action against an employee and his employer for damages for an assault committed on the plaintiff by the employee, following an altercation as to whether the employer's truck, driven by the employee, had struck the plaintiff's automobile. The employee hit the plaintiff with a wrench. The court held, as a matter of law, that the employee was acting in the course of his employment, saying in part (p. 842): ''Nor is it of any consequence that 'the employer here could not expect that the wrench would be used [by Sanders] as a club' to beat plaintiff.'' (See also the following cases in which it was held that the employee was acting in the course of his employment: *Haworth* v. *Elliott,* 67 Cal.App.2d 77 [153 P.2d 804], party injured when he was ejected by defendant's bartender; *Andrews* v. *Seidner,* 49 Cal.App.2d 427 [121 P.2d 863], party assaulted because he refused to pay for some drinks; *Stansell* v. *Safeway Stores, Inc.,* 44 Cal.App.2d 822 [113 P.2d 264], customer assaulted by store manager; *Kruse* v. *White Brothers,* 81 Cal.App. 86 [253 P. 178], deviated from the direct route to take girl friend home; *United States* v. *Wibye,* 9 Cir., 191 F.2d 181, digressed from normal route so he could see his mother.)

Defendant cites *Feeney* v. *Standard Oil Co.*, 58 Cal.App. 587 [209 P. 85], and *Yore* v. *Pacific Gas & Elec. Co.*, 99 Cal.App. 81 [277 P. 878], for the rule that smoking by an employee is not within the course of his employment. The dicta in the Feeney case, and the Yore case which relied principally on the dicta in the Feeney case, were overruled in *George* v. *Bekins Van & Storage Co.*, 33 Cal.2d 834 [205 P.2d 1037]. (See 57 C.J.S. 334, § 575b and cases cited.)

As indicated in *Carr* v. *Wm. C. Crowell Co.*, *supra*, 28 Cal.2d 652 [171 P.2d 5], cases arising under the Workmen's Compensation Law are of assistance in determining the limits of the phrase ''in the course of employment.'' Speaking of the phrase ''in the course of employment'' in workmen's compensation acts, Dean Prosser says, ''The considerations which determine the 'course of employment' are much the same as in the case of the vicarious liability of the employer for the torts of his servant.'' (Prosser on Torts, 529, § 69.)

In *Whiting-Mead Commercial Co.* v. *Industrial Acc. Com.*, 178 Cal. 505 [173 P. 1105, 5 A.L.R. 1518], the court declared that the use of tobacco should be placed on the ''list of ministrations to the comfort of the employed'' and that an ''employer must expect the employed to resort to the use of tobacco as a necessary adjunct to the discharge of his employment.'' In that case, a workman during the course of his employment ran a nail into the palm of his right hand and had the wound bandaged. He continued to work. Twice during the day the bandage was soaked with turpentine by an agent of the company in an endeavor to alleviate the pain. Soon after the second application the employee temporarily ceased his labor and struck a match for the purpose of lighting a cigarette. The saturated bandage was ignited by the match and the hand was seriously burned. The court held the injury arose in the course of the employment. Whiting-Mead has been cited with approval in many cases. (*Adams* v. *American President Lines*, 23 Cal.2d 681, 685 [146 P.2d 1]; *Pacific Emp. Ins. Co.* v. *Industrial Acc. Com.*, 26 Cal.2d 286, 293 [158 P.2d 9, 159 A.L.R. 313]; *Goodrich* v. *Industrial Acc. Com.*, 22 Cal.2d 604, 608 [140 P.2d 405]; *Elliott* v. *Industrial Acc. Com.*, 21 Cal.2d 281, 282 [131 P.2d 521, 144 A.L.R. 358]; see also anno.: 5 A.L.R. 1521.) An employee was held acting in the course of his employment when matches carried in his pocket ignited from collision with a partition in the employer's washroom. (*Steel Sales Corp.* v. *Industrial Com.*, 293 Ill. 435 [127 N.E. 698, 14 A.L.R. 274].)

In *State Comp. Ins. Fund* v. *Industrial Acc. Com.*, 38 Cal. 2d 659 [242 P.2d 311], an employee, who was the aggressor, was injured in a fight with his foreman while they were at work. The court stated (p. 661), "There is no doubt that the injury occurred in the course of the employment, for that has reference ordinarily to time and place. Hull [the aggressor] has satisfied both aspects," and cited with approval and quoted at length from *Carr* v. *Wm. C. Crowell Co., supra*, 28 Cal.2d 652, and cited *Fields* v. *Sanders, supra*, 29 Cal.2d 834, with approval.

The employee was held to have been acting in the course of his employment under the conditions described in the following cases: Flight instructor took his daughter on an "orientation ride," *Phoenix Indem. Co.* v. *Industrial Acc. Com.*, 31 Cal.2d 856 [193 P.2d 745]; deviated from his usual route to look for a restaurant, *Lockheed Aircraft Corp.* v. *Industrial Acc. Com.*, 28 Cal.2d 756 [172 P.2d 1]; malpractice of insurance carrier's physician after employee injured while at work, *Heaton* v. *Kerlan*, 27 Cal.2d 716 [166 P.2d 857]; stopped to bathe in employer's irrigation reservoir, *Pacific Indem. Co.* v. *Industrial Acc. Com.*, 26 Cal.2d 509 [159 P.2d 625]; driving home to tell his wife he would be working that night and to phone from there about a tool, *Goodrich* v. *Industrial Acc. Com.*, 22 Cal.2d 604 [140 P.2d 405]; upon returning to place of work, caught her heel in the hem of her dress on alighting from automobile, fell and broke her wrist, *California Cas. Indem. Exch.* v. *Industrial Acc. Com.*, 21 Cal.2d 751 [135 P.2d 158]; going into hallway to obtain fresh air, *F. W. Woolworth Co.* v. *Industrial Acc. Com.*, 17 Cal.2d 634 [111 P.2d 313]; told to go to another plant, stopped for coffee at a coffee shop, went back to obtain an overcoat, struck by automobile on way, *Leffert* v. *Industrial Acc. Com.*, 219 Cal. 710 [28 P.2d 911]; messenger went home to procure his raincoat, and on his way back to the office was injured, *Western Pac. R. R. Co.* v. *Industrial Acc. Com.*, 193 Cal. 413 [224 P. 754]; resting in the shade from the sun on way to another part of employer's premises, *Brooklyn Min. Co.* v. *Industrial Acc. Com.*, 172 Cal. 774 [159 P. 162]; assaulted another automobile driver, *Pritchard* v. *Gilbert*, 107 Cal.App.2d 1 [236 P.2d 412]; drank carbon tetrachloride from a bottle believing it contained whiskey at a party on the day before Christmas, *Satchell* v. *Industrial Acc. Com.*, 94 Cal.App.2d 473 [210 P.2d 867]; to prove that a solvent was not inflammable, soaked a rag with it and set fire thereto,

*Joshua Hendy Iron Works* v. *Industrial Acc. Com.*, 74 Cal. App.2d 191 [168 P.2d 203]; bartender assaulted a customer while ejecting him, *Gardner* v. *Industrial Acc. Com.*, 73 Cal. App.2d 361 [166 P.2d 362]; after checking out from his work, he fell when he turned away from the window in picking up a government bond purchased by means of a wage-withholding plan, *Bethlehem Steel Co.* v. *Industrial Acc. Com.*, 70 Cal.App.2d 382 [161 P.2d 59]; domestic servant injured herself when she fell from a stool in the process of sewing a hem on her dress, *Employers' etc. Corp.* v. *Industrial Acc. Com.*, 37 Cal.App.2d 567 [99 P.2d 1089]; drove a prospective customer to see some property and stopped for lunch after prescribed hours, *Griffin* v. *Industrial Acc. Com.*, 19 Cal.App.2d 727 [66 P.2d 176]; after lighting a cigarette, dropped a match on spilled gasoline, *Torosian* v. *Industrial Acc. Com.*, 11 Cal.App.2d 204 [53 P.2d 384]; went to obtain water to revive a fellow employee who had fainted, *County of Los Angeles* v. *Industrial Acc. Com.*, 89 Cal.App. 736 [265 P. 362]; going to another part of employer's premises to visit a fellow worker, *Twin Peaks Canning Co.* v. *Industrial Com.*, 57 Utah 589 [196 P. 853, 20 A.L.R. 872].

Whether an employee was acting in the course of his employment at the time of the accident is generally a question of fact to be determined in light of the circumstances of the particular case. (*Lockheed Aircraft Corp.* v. *Industrial Acc. Com.*, 28 Cal.2d 756, 758 [172 P.2d 1]; *Loper* v. *Morrison*, 23 Cal.2d 600, 607 [145 P.2d 1]; *California Cas. Indem. Exch.* v. *Industrial Acc. Com.*, 21 Cal.2d 751, 760 [135 P.2d 158]; *Industrial Indem. Co.* v. *Industrial Acc. Com.*, 108 Cal.App.2d 632, 635 [239 P.2d 477]; *McChristian* v. *Popkin*, 75 Cal.App.2d 249, 255 [171 P.2d 85]; *Cain* v. *Marquez*, 31 Cal.App.2d 430, 434 [88 P.2d 200]; *Torosian* v. *Industrial Acc. Com.*, *supra*, 11 Cal.App.2d 204, 207; *Gammon* v. *Wales*, 115 Cal.App. 133, 137 [300 P. 988]; *Kruse* v. *White Brothers*, 81 Cal.App. 86, 94 [253 P. 178].)

Whether an employee's deviation from his course of duty was so material or substantial as to constitute a complete departure is usually a question of fact. (*Dolinar* v. *Pedone*, 63 Cal.App.2d 169, 175 [146 P.2d 237].)

Lupella left his assigned work to go to the washroom to use its facilities and to smoke, acts necessary to his health and comfort and incidental to and within the course of his employment. He stopped to fill his cigarette lighter with

spatter thinner, a highly volatile and inflammable substance maintained and used by defendant and left by it in a drum adjacent to an aisle used for going to the washroom. Lupella intended to use the thinner as fluid for his lighter so he could smoke in the washroom. Although his deviation or deflection from going directly to the washroom was for a personal reason it was committed so he could later enjoy the comfort of smoking in the washroom, where it was permitted. His main purpose was to pursue an act which was necessarily contemplated by defendant and which therefore was within his course of employment.

█ Defendant's business required the usage of spatter thinner, a highly explosive and inflammable substance, and it was attended by the risk that smoking on the part of an employee would set fire to the thinner and the paints. Whether it was a reasonable act and in the course of Lupella's employment for him to attempt to fill his cigarette lighter from the filler drum was a question of fact. It was for the jury to say whether the deviation was so material or substantial as to constitute a complete departure from defendant's business. It could have found that there was a mingling of a personal purpose with the pursuit of defendant's business. Lupella had not necessarily assumed a status distinct from that of an employee and for the time being had put off his general status as an employee. He was not, as a matter of law, doing something outside the sphere of his employment. We are of the opinion that an inference can reasonably be drawn from the evidence that Lupella's act was done in the course of his employment. Whether such inference should be drawn was a question for the jury.

Plaintiffs urge that the jury could have reasonably found that defendant was negligent in maintaining the highly volatile, inflammable, and dangerous thinner in a container which was not a safety container, with a spigot which did not close automatically, and in an unguarded position adjacent to an aisle, readily accessible to all persons in the premises including Lupella. We are constrained to agree. █ " 'The rule, as we understand it, applicable to such cases, is that where the original negligence of a defendant is followed by an independent act of a third person which results in a direct injury to a plaintiff, the negligence of such defendant may, nevertheless, constitute the proximate cause thereof if, in the ordinary and natural course of events, the defendant should have known the intervening act was likely to happen;

but if the intervening act constituting the immediate cause of the injury was one which it was not incumbent upon the defendant to have anticipated as reasonably likely to happen, then, since the chain of causation is broken, he owes no duty to the plaintiff to anticipate such further acts, and the original negligence cannot be said to be the proximate cause of the final injury.' '' (*Sawyer* v. *Southern Calif. Gas Co.*, 206 Cal. 366, 374 [274 P. 544].) *Mosley* v. *Arden Farms Co.*, 26 Cal.2d 213 [157 P.2d 372, 158 A.L.R. 872], is in point. In Mosley an employee of the defendant piled milk crates on a parking near the sidewalk and left them unguarded and unattended for at least a month. The plaintiff, in driving a mowing machine, collided with crates which were hidden by weeds between the sidewalk and the property line. Affirming a judgment for the plaintiff, the court said that whether a person of ordinary prudence should have foreseen or anticipated that someone might be injured by the action of the employee was one of fact for the trier of fact, and (p. 219) '' 'If the realizable likelihood that a third person may act in a particular manner is the hazard or one of the hazards which makes the actor negligent, such an act whether innocent, negligent, intentionally tortious or criminal does not prevent the actor from being liable for harm caused thereby.' (Rest., Torts, § 449.) It has been held that the rules on the subject in the Restatement of Torts, sections 442-453, are applicable in this state.'' (See also *McEvoy* v. *American Pool Corp.*, 32 Cal.2d 295, 298-299 [195 P.2d 783] ; *Merrill* v. *Los Angeles Gas & Elec. Co.*, 158 Cal. 499, 504 [111 P. 534, 139 Am.St. Rep. 134, 31 L.R.A.N.S. 559] ; *Carroll* v. *Central Counties Gas Co.*, 74 Cal.App. 303, 307-308 [240 P. 53].) In *Sawyer* v. *Southern Calif. Gas Co., supra,* 206 Cal. 366, the court stated (p. 376) : ''The probability of an accident happening through the acts of a third person in the manner in which it did happen, in the circumstances of the case, presented an issue of fact that may well have been submitted to the jury.'' (See also *Osborn* v. *City of Whittier,* 103 Cal.App.2d 609, 616 [230 P.2d 132].)

Whether defendant exercised ordinary care in maintaining the highly volatile, inflammable, and dangerous thinner in the manner which it did was a question for the jury. It cannot be said, as a matter of law, that defendant should not have anticipated that Lupella or some other person might negligently deal with the thinner and cause a fire.

We conclude that the record contains evidence of sufficient

substantiality to support a verdict in favor of plaintiffs, and that the trial court erred in granting the motion for a directed verdict.

Reversed.

Wood (Parker), J., concurred.

SHINN, P. J.—I concur in the judgment: I agree that on the former appeal the court did not *hold* upon the facts found that Lupella was not acting within the scope of his employment. The trial court had found that Lupella's act of filling the lighter "was not connected with the duties which said Lupella was then delegated to perform for defendant Ideal." It was this finding, I suppose, that the court said would be inconsistent with a finding that Lupella was acting within the scope of his employment. In view of the court's finding the judgment was clearly erroneous. I do not see that on the appeal the court decided anything else. There was an implication in the general reversal that the trial court could find that Lupella was acting within the scope of his employment.

I agree that the questions whether Lupella was acting within the scope of his employment and whether he was negligent should have been submitted to the jury. I do not agree that there was evidence that defendant was negligent with respect to the drum of paint thinner. Filling a lighter from a spigot with an automatic shut-off would have been as likely to cause a fire as filling it from the kind that was used. It was capable of being shut off and I cannot believe defendant had any reason to anticipate that someone would kick it and break it off or that any accident would happen of the general nature of the one that did happen because of the type of spigot that was on the drum or the way the thinner was being stored and used. There was no danger except in the use of the thinner by the workmen.

A petition for a rehearing was denied January 20, 1955, and respondent's petition for a hearing by the Supreme Court was denied February 16, 1955.