Filed 6/2/26  Wrenne v. JA Sutherland CA3

<u>NOT TO BE PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Shasta)

|  |  |
|---|---|
| LINDA WRENNE et al.,<br>    Plaintiffs and Appellants,<br><br>    v.<br><br>JA SUTHERLAND, INC., et al.,<br>    Defendants and Respondents. | C102531<br><br>(Super. Ct. No. 24CV0204643) |

The California Workers' Compensation Act (WCA; Lab. Code, § 3200, et seq.)[1] is a comprehensive statutory scheme governing the compensation employers must pay employees for injuries suffered in the course and scope of their employment.  (*Charles J. Vacanti, M.D., Inc. v. State Comp. Ins. Fund* (2001) 24 Cal.4th 800, 810 (*Vacanti*); *King v. CompPartners, Inc.* (2018) 5 Cal.5th 1039, 1046, 1051 (*King*).)  As a general rule, the workers' compensation system is the *sole* or exclusive remedy available for an employee's work-related injuries, including death.  (*Kuciemba v. Victory Woodworks, Inc.* (2023) 14 Cal.5th 993, 1006 (*Kuciemba*).)  This rule is known as the workers' compensation exclusivity rule.  (See *Singh v. Southland Stone, U.S.A., Inc.* (2010) 186 Cal.App.4th 338, 365.)

---

[1]  Undesignated statutory references are to the Labor Code.

1

In March 2022, Kevin Wrenne, an employee of a Taco Bell in Redding, was fatally stabbed in the restaurant's parking lot during an unpaid 30-minute meal break. Wrenne's parents and his estate (collectively, plaintiffs) filed this wrongful death and survival action against "Taco Bell Corp." and others, asserting claims for premises liability and negligence. Plaintiffs appeal from the judgment entered after the trial court sustained the demurrers to the complaint without leave to amend. Plaintiffs argue the trial court erred by relying on the "premises line rule" to conclude that their claims were barred as a matter of law under the workers' compensation exclusivity rule. In other words, plaintiffs contend the trial court erroneously determined that Wrenne's injuries fell within the exclusive remedy provisions of the WCA, such that they were precluded from bringing the instant civil action. We see no error and affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Because this appeal challenges an order sustaining two demurrers, we summarize the facts underlying this action assuming, as we must, the truth of all properly pleaded allegations in the complaint. (*Heckart v. A-1 Self Storage, Inc*. (2018) 4 Cal.5th 749, 753.)

*Complaint*

In 2022, Wrenne was employed by J.A. Sutherland, Inc. (J.A. Sutherland) and Andrew Hennan, Sr. (Hennan),[2] the owners and/or operators of a Taco Bell fast-food restaurant located at 1220 Market Street in Redding. Nielsen Motor Co. (Nielsen Motor) owned the real property and leased it to J.A. Sutherland. Wrenne was a crew member of the subject Taco Bell.

---

[2] According to J.A. Sutherland and Hennan, plaintiffs erroneously sued "Andrew Hennan *Sr.*"

On the evening of March 28, 2022, Wrenne was fatally stabbed in his employer's parking lot in an unprovoked attack by Brent Close, "a transient individual." At the time of the stabbing, Wrenne was on a 30-minute unpaid lunch (or meal) break. After clocking out, Wrenne went to the Taco Bell parking lot and sat down on the curb. Thereafter, Close approached Wrenne and stabbed him five times in the neck and chest. Close was subsequently arrested and found guilty of murder.

In March 2024, plaintiffs (i.e., Wrenne's parents and his estate) brought this wrongful death and survival action against J.A. Sutherland, Nielsen Motor Co., Taco Bell Corp., and Hennan. The complaint alleged two causes of action: (1) dangerous and defective condition of premises (i.e., premises liability), and (2) negligence. Plaintiffs' claims were based on defendants' failure to maintain safe premises and to take reasonable safety precautions to protect against foreseeable criminal acts of third parties (e.g., provide proper lighting, suitable resting areas for employees, security guards, surveillance cameras). According to plaintiffs, the fatal stabbing was foreseeable because the Taco Bell was in a high crime area and there was an extensive history of violent threats and acts at the restaurant, including "stabbings." In support of their position, plaintiffs alleged that more than 1,000 calls for service were made to the Redding Police Department in the 10 years prior to Wrenne's death, including 282 calls for service in the preceding three years, 99 of which were made by Taco Bell employees.

*Demurrers*

In June 2024, J.A. Sutherland and Hennan filed a demurrer, which primarily argued that the complaint was subject to dismissal for lack of subject matter jurisdiction because plaintiffs' claims fell within the exclusive jurisdiction of the state workers' compensation system, as Wrenne was fatally stabbed in his employer's parking lot during the course and scope of his employment. In making this argument, J.A. Sutherland and Hennan relied on the "premises line rule," which, in their view, made workers' compensation the sole or exclusive remedy for the injuries Wrenne suffered on his

3

employer's premises during an authorized unpaid break from his work shift. In other words, plaintiffs claimed that the instant action was barred by the workers' compensation exclusivity rule.

In July 2024, Taco Bell Corp. and Taco Bell Franchisor, LLC[3] filed a separate demurrer, which also relied on the "premises line rule" to argue that the claims alleged in the instant action were barred by the workers' compensation exclusivity rule.

In August 2024, after the trial court granted Nielson Motor's motion to strike the punitive damage allegations and plaintiffs decided not to amend their complaint, the demurring parties refiled their respective demurrers.

In September 2024, plaintiffs filed separate written oppositions to the demurrers.

*Trial Court's Ruling*

In October 2024, after a hearing, the trial court sustained the demurrers without leave to amend. In so ruling, the court stated, in relevant part, as follows:

"[Section] 3600 et seq limits employer liability for injuries alleged to have been sustained by employees arising out of, and in the course of employment. See ... § 3602(a). In such instances, worker's compensation is generally the exclusive remedy. *Jones v. Regents of University of California* (2023) 97 Cal.App.5th 502, 507 [(*Jones*)]. Under the premises line rule, the employment relationship generally commences once the employee enters the employer's premises. *Id*. at 508. The same rule applies to determine the end of the course of employment: generally, once employment has begun, it continues, and injury is presumed to be compensable, until the employee leaves the employer's premises. *Id*.

---

[3]  According to Taco Bell Franchisor, LLC, plaintiffs erroneously sued "Taco Bell Corp."

"In *Jones*, the plaintiff Rose Jones was an employee of the Regents of the University of California. *Id*. at 505. Jones left at the end of her workday, exited her office suite, walked her bike a short distance and then rode her bike for about 10 seconds before she crashed and was injured. *Id*. at 505-06. The trial court found, and the appellate court affirmed, that her tort claims against her employer for negligence and premise liability were barred by the worker's compensation exclusivity rule relying on the premise line rule. *Id*. at 511.

"Here, Plaintiffs have brought causes of action for premise liability and negligence as the heirs at law and successors in-interest to ... Wrenne. The Complaint alleges that [Wrenne] was assaulted while on an uncompensated break while located on the premises of the Defendants. [Wrenne] was seated on a curb outside the establishment, but on the premises, when he was attacked and stabbed by a third party.

"The Court finds that the current situation is factually analogous to *Jones*. [Wrenne] like Jones had started his employment for the day. [Wrenne] like Jones was on the premises of his employer without having left the premises to end his employment. Both were uncompensated at the time of the incident that gives rise to the claims. Based on the foregoing, the Court finds that the worker's compensation exclusivity rule bars the Plaintiffs' tort claims which are identical to the claims in *Jones*. The demurrer[s] [are] sustained as to the entirety of the complaint based on the worker's compensation exclusivity rule."

*Appeal and Appellate Briefing*

Plaintiffs timely appealed. The matter was fully briefed and assigned to this panel in December 2025.

## DISCUSSION

### I

### *Standard of Review*

A demurrer tests the legal sufficiency of the factual allegations in a complaint. (*SJJC Aviation Services, LLC v. City of San Jose* (2017) 12 Cal.App.5th 1043, 1051-1052.) On appeal from a judgment of dismissal based on an order sustaining a demurrer, we apply a de novo standard of review; we exercise our independent judgment about whether the pleading sufficiently states a viable cause of action under any legal theory. (*Loeffler v. Target Corp.* (2014) 58 Cal.4th 1081, 1100; *Committee for Green Foothills v. Santa Clara County Bd. Of Supervisors* (2010) 48 Cal.4th 32, 42; *Dilbert v. Newsom* (2024) 101 Cal.App.5th 317, 322.)

In determining whether a demurrer was properly sustained, we accept as true "all facts properly pleaded by the plaintiffs, as well as those that are judicially noticeable." (*Howard Jarvis Taxpayers Assn. v. City of La Habra* (2001) 25 Cal.4th 809, 814.) However, we do not assume the truth of contentions, deductions, or conclusions of fact or law. (*Yvanova v. New Century Mortgage Corp.* (2016) 62 Cal.4th 919, 924.) We read the challenged pleading as a whole and its parts in their context to give the pleading a reasonable interpretation. (*Evans v. City of Berkeley* (2006) 38 Cal.4th 1, 6.) The plaintiff bears the burden of demonstrating that the demurrer was sustained erroneously. (*Allen v. City of Sacramento* (2015) 234 Cal.App.4th 41, 52.) " ' "We affirm [the judgment] if any ground offered in support of the demurrer was well taken.... We are not bound by the trial court's stated reasons, if any, supporting its ruling; we review the ruling, not its rationale." ' " (*Ramirez v. Tulare County Dist. Attorney's Office* (2017) 9 Cal.App.5th 911, 924.)

When a trial court has sustained a demurrer without leave to amend, we must "decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not,

there has been no abuse of discretion and we affirm." (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318; see also *Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081.) Such a showing can be made for the first time on appeal. (*Smith v. State Farm Mutual Automobile Ins. Co.* (2001) 93 Cal.App.4th 700, 711.) "The plaintiff has the burden of proving that an amendment would cure the defect." (*Schifando*, at p. 1081; *Blank*, at p. 318.) To meet this burden, a plaintiff "must show in what manner he can amend his complaint and how that amendment will change the legal effect of his pleading." (*Goodman v. Kennedy* (1976) 18 Cal.3d 335, 349.)

*II*

*Order Sustaining the Demurrers*

Plaintiffs argue the trial court erred in concluding that their claims for premises liability and negligence were barred as a matter of law under the workers' compensation exclusivity rule. Reversal is required, in plaintiffs' view, because the trial court misapplied the "premises line rule" in finding that Wrenne's injuries were work-related and therefore within the scope of the exclusive remedy provisions of the WCA. We disagree.

A. Workers' Compensation Exclusivity Rule

As previously indicated, the WCA (§ 3200, et seq.) provides a comprehensive system of remedies for work-related injuries that are available only in proceedings before the Workers' Compensation Appeals Board. (See §§ 3602, subd. (a), 5300; *Kuciemba, supra,* 14 Cal.5th at pp. 1005-1006.) As a general rule, workers' compensation is the sole or exclusive remedy for injuries sustained by an employee " 'arising out of and in the course of the employment.' " (*King, supra,* 5 Cal.5th at p. 1051; see also *Jimenez v. Mrs. Gooch's Natural Food Markets, Inc*. (2023) 95 Cal.App.5th 645, 654; see *Kuo v. Dublin Unified School Dist.* (2025) 109 Cal.App.5th 662, 669.)

7

In determining whether the workers' compensation exclusivity rule bars a cause of action against an employer, courts initially determine whether the alleged injury falls within the scope of the exclusive remedy provisions of the WCA. (*Vacanti, supra,* 24 Cal.4th at p. 811.) "Subdivision (a) of section 3600 provides in relevant part: 'Liability for the compensation provided by this division, i*n lieu of any other liability whatsoever to any person ...* shall, without regard to negligence, exist against an employer for any injury sustained by his or her employees *arising out of and in the course of the employment* and for the death of any employee if the injury proximately causes death, in those cases where the ... conditions of compensation concur." (*Id.*, at p. 812, italics added; see § 3600, subd. (a) [listing various "conditions of compensation" (e.g., "at the time of the injury, the employee [was] performing service growing out of and incidental to his or her employment and is acting within the course of his or her employment"].) Thus, workers' compensation is the sole remedy for an injured employee when the injury arose out of and was in the course of their employment. (*LaTourette v. Workers' Comp. Appeals Bd.* (1998) 17 Cal.4th 644, 650.)

The phrase "in the course of the employment," ordinarily refers to the time, place, and circumstances under which the injury occurred. (*LaTourette v. Workers' Comp. Appeals Bd., supra*, 17 Cal.4th at p. 651.) " 'Thus " '[a]n employee is in the "course of his employment" when he does those reasonable things which his contract with his employment expressly or impliedly permits him to do.' " ' " (*Ibid*.) The phrase "arising out of the employment," concerns whether the injury occurred by reason of a condition or incident of the employment. (*Id.* at p. 651.) In other words, " 'the employment and the injury must be linked in some causal fashion.' " (*Ibid*.)

The basis for the workers' compensation exclusivity rule is a "compensation bargain" whereby the employer assumes liability without regard to fault for workplace injuries in exchange for limitations on the amount of that liability, and the employee obtains relatively swift and certain payment of benefits without having to prove fault in

exchange for giving up the wider range of damages potentially available in tort. (*Shoemaker v. Myers* (1990) 52 Cal.3d 1, 16; see also *King, supra,* 5 Cal.5th at pp. 1046-1047; *Kuciemba, supra,* 14 Cal.5th at p. 1006.)

"Because the workers' compensation system has its theoretical basis in the compensation bargain between employer and employee, a nuanced analysis is required when [(as here)] third parties seek to sue the employer after an employee's work-related injury. In general, workers' compensation benefits provide the exclusive remedy for third party claims if the asserted claims are "collateral to or derivative of" the employee's workplace injury. [Citations.] This aspect of workers' compensation law is sometimes called the derivative injury doctrine." (*Kuciemba, supra,* 14 Cal.5th at p. 1006.) An example of a third-party claim deemed "collateral" or "derivative" is an heir's claim for an employee's wrongful death. (*Ibid*.; see *id.* at p. 1007 [noting that, as a general matter, "a family member's claim for an injury derived from an employee's workplace injury is barred by workers' compensation exclusivity"].)

As our Supreme Court has explained: There are "unique causation principles" underlying section 3600, which "provides a workers' compensation remedy for an injury linked ' " 'in some causal fashion' " ' to employment. This causation requirement differs markedly from ordinary tort principles, in that ' " ' "[a]ll that is required is that the employment be one of the contributing causes without which the injury would not have occurred." ' " ' " (*King, supra,* 5 Cal.5th at p. 1052; see *Ross v. Workmen's Comp. Appeals Bd*. (1971) 21 Cal.App.3d 949, 955 ["The proximate causation requirement is fulfilled if the employment be a contributory cause of the injury; it need not be the sole cause"].) "[A] sufficient causal connection between the injury and the employment is shown where the employment was a contributory cause of the injury, that where the injury occurs on the employer's premises while the employee is in the course of his employment the injury also arises out of the employment unless the connection is so remote from the employment that it is not an incident thereof, and that an injury can arise

out of the employment even though the employer had no connection with or control over the force which caused the injury." (*California Compensation & Fire Co. v. Workmen's Comp. App. Bd.* (1968) 68 Cal.2d 157, 160.)

"The [workers' compensation] exclusive remedy rule is an affirmative defense to an action at law. [Citation.] '[W]here the complaint affirmatively alleges facts indicating coverage by the workers' compensation laws, if it fails to state additional facts negating application of the exclusive remedy provision, no civil action will lie and the complaint is subject to a general demurrer.' " (*Vann v. City and County of San Francisco* (2023) 97 Cal.App.5th 1013, 1021 [" 'If the injury falls within the scope of the [WCA], a proceeding thereunder constitutes his exclusive remedy' "]; see *Kuciemba, supra,* 14 Cal.5th at p. 1006 [when the "conditions of compensation" set forth in subdivision (a) of section 3600 are met, the employer is immune from civil damages liability for work-related injuries because workers' compensation is the injured employee's exclusive remedy].)

The WCA " ' "must be liberally construed in the employee's favor," ' " and " ' "all reasonable doubts as to whether an injury arose out of employment are to be resolved in favor of the employee." ' " (*Department of Rehabilitation v. Workers' Comp. Appeals Bd.* (2003) 30 Cal.4th 1281, 1290.) The provisions of the WCA must be " 'liberally construed by the courts with the purpose of extending their benefits for the protection of persons injured in the course of their employment.' [Citation.] This rule of liberal construction applies even though a particular plaintiff might prefer to forgo a workers' compensation remedy in favor of a remedy at law: We construe the WCA ' "in favor of awarding work[ers'] compensation, not in permitting civil litigation." ' " (*King, supra,* 5 Cal.5th at p. 1051.)

B. *The Coming and Going Rule*

"As a general rule, injuries sustained by an employee while commuting to and from work are *not* compensable under the workers' compensation system. [Citation.]

10

This rule, known as the going and coming rule, *bars* workers' compensation for injuries that occur 'during a local commute enroute to a fixed place of business at fixed hours in the absence of special or extraordinary circumstances.' " (*Wright v. State of California* (2015) 233 Cal.App.4th 1218, 1230, italics added.)

The " 'going and coming rule' is regularly applied to off-premises lunchtime injuries." "However, under the ... rule, compensation will be awarded if the employee was being paid at the time he suffered the off-premises injury. [Citations.] Conversely, off-premises lunchtime injuries are not compensable when the employee was not paid during the lunch break." (*Duncan v. Workers' Comp. Appeals Bd.* (1983) 150 Cal.App.3d 117, 120; see also *Wood Pontiac Cadillac v. Superior Court* (1992) 5 Cal.App.4th 810, 812; *McFadden v. Workers' Comp. Appeals Bd*. (1988) 203 Cal.App.3d 279, 281-282.)

C. *Personal Comfort Doctrine*

"The personal comfort doctrine provides, generally, that compensation extends to injuries suffered while the employee is engaged briefly and during work hours in a personal act which is necessary or helpful to his comfort or convenience." (*Duncan v. Workers' Comp. Appeals Bd.*, *supra*, 150 Cal.App.3d at p. 120; see *DeMirjian v. Ideal Heating Corp.* (1954) 129 Cal.App.2d 758, 765-767 ["Acts necessary to the comfort, convenience, health, and welfare of the employee while at work, though strictly personal to himself and not acts of service, do not take him outside the course of his employment"].) "The personal comfort doctrine is not strictly limited to injuries suffered on the employer's premises [citations], and whether it applies will depend upon whether the acts 'are helpful to the employer in that they aid in efficient performance by the employee.' [Citation.] Its limit is reached when the acts 'are found to be departures effecting temporary abandonment of employment.' " (*Duncan,* at p. 120; see *Western Greyhound Lines v. Industrial Acc. Com*. (1964) 225 Cal.App.2d 517, 520-521

11

[explaining that off-premises injuries suffered by an employee during a paid break can fall within the personal comfort doctrine because of a benefit to the employer].)

"Acts of 'personal convenience' are within the course of employment if they are ' "reasonably contemplated by the employment." ' " (*Price v. Workers' Comp. Appeals Bd.* (1984) 37 Cal.3d 559, 568.) "[E]mployees who, within the time and space limits of their employment, engage in acts which minister to their personal comfort do not ... ordinarily leave the course of their employment, and therefore injuries occurring on the premises of the employer ... during a regular lunch break arise within the course of employment, as being incidental to such employment [citation], even though the lunch is technically outside the regular hours of employment, is uncompensated, and the employees are not then, generally speaking, under the control of their employer." (*Gutierrez v. Petoseed Co.* (1980) 103 Cal.App.3d 766, 768-769 (*Gutierrez*); see *DeMirjian v. Ideal Heating Corp.*, *supra*, 129 Cal.App.2d at p. 765 [cessation of work for eating, drinking and similar necessities "are necessary incidents of employment"].)

D. *The Premises Line Rule*

Over time, the going and coming rule became the subject of significant criticism. For example, the California Supreme Court described it as a " ' "slippery concept,' 'riddled with exceptions," ' and difficult to apply uniformly. [Citation.] Such criticism led, among other things, to the premises line rule." (*Wright v. State of California, supra,* 233 Cal.App.4th at p. 1230; see also *Jones, supra*, 97 Cal.App.5th at p. 508.)

In an effort to create a "sharp line of demarcation" as to when the employee's commute terminates and the course of employment commences for purposes of determining whether an injury occurred in the course of employment, " 'courts adopted the premises line rule, which provides that the employment relationship generally commences once the employee enters the employer's premises.' " (*Jones, supra*, 97 Cal.App.5th at p. 508; see also *Schultz v. Workers' Comp. Appeals Bd*. (2015) 232

12

Cal.App.4th 1126, 1135 (*Schultz*).) " 'Prior to entry[,] the going and coming rule ordinarily precludes recovery [of workers' compensation benefits]; after entry, injury is generally presumed compensable as arising in the course of employment.' " (*Jones*, at p. 508; see also *Schultz,* at p. 1135.) "The same rule applies to determine the end of the course of employment: generally, once employment has begun, it continues, and injury is presumed to be compensable, until the employee leaves the employer's premises." (*Jones*, at p. 508.) The employer's premises include its parking lot. (*General Ins. Co. v. Workers' Comp. Appeals Bd.* (1976) 16 Cal.3d 595, 598-599 (*General Ins.*); see also *Schultz*, at p. 1135.)

" 'The liability of an employer for injuries sustained by [its] employees on the employment premises is exceedingly broad. Extending [the employer's] liability to the total premises is somewhat arbitrary but as a practical measure is well established.' " (*Schultz, supra,* 232 Cal.App.4th at p. 1136.) Our Supreme Court has explained that the "premises line rule" has the advantage of enabling courts to ascertain the point at which employment begins and ends—objectively and fairly, and that any disadvantages of such " 'a sharp, objective, and perhaps somewhat arbitrary line has been drawn,' " are outweighed by " attempting to formulate and apply a subjective rule justly." (*General Ins.*, *supra*, 16 Cal.3d at p. 599; see also *Jones, supra*, 97 Cal.App.5th at p. 509.)

Where, as here, there is no real dispute about facts that are material to the premises line rule, the question of whether an injury was suffered in the course of employment is one of law. (*Schultz, supra,* 232 Cal.App.4th at pp.1134-1135; see *Wright v. Beverly Fabrics, Inc.* (2002) 95 Cal.App.4th 346, 353 [when the facts are undisputed, the question of whether an employee's injuries arose out of and in the course of his employment is a question of law].) Because the workers' compensation law is liberally construed, any doubts as to whether the premises line rule applies are to be resolved in favor of awarding workers' compensation, not in permitting civil litigation. (See *Schultz,* at p. 1135.)

13

E. *Analysis*

As we next explain, because the complaint alleges injuries that are derivative of a compensable workplace injury, plaintiffs' claims for premises liability and negligence fall within the scope of the workers' compensation bargain and are therefore only compensable within the workers' compensation system. The exclusive remedy provisions of the WCA apply here because Wrenne's injuries arose out of and occurred in the course of his employment with Taco Bell. Indeed, had Wrenne not been working a shift at Taco Bell, he would not have been stabbed and killed in the restaurant's parking lot during his 30-minute unpaid meal break.

Here, the complaint alleged the fatal stabbing of Wrenne arose from unsafe work conditions, which exposed him to violent and dangerous individuals that patronized the Taco Bell and/or hung out in the surrounding area, including the restaurant's parking lot. According to plaintiffs, defendants knew the restaurant was in a high crime area but failed to take adequate steps to protect Taco Bell employees, such as providing adequate lighting (including in the parking lot), suitable resting facilities, and security guards. Plaintiffs further alleged that, as a result of defendants' negligence in failing to implement reasonable security measures, Wrenne was fatally stabbed in the Taco Bell parking lot while on an unpaid 30-minute meal break.

On this record, the trial court correctly determined that plaintiffs' claims were barred as a matter of law by the workers' compensation exclusivity rule under the premises line rule, as Wrenne suffered bodily injuries on his employer's premises during the course and scope of his employment. (See *Jones, supra*, 97 Cal.App.5th at pp. 509 [workers' compensation exclusivity rule barred professor's tort claims where she suffered injuries as the result of a bicycle accident that occurred on the university's campus shortly after she left her workstation]; *Schultz, supra*, 232 Cal.App.4th at pp. 1128, 1129, 1136-1138 [workers' compensation was the exclusive remedy for injuries suffered by an employee from a car accident on the employer's premises (military base) prior to the

14

employee reaching his workstation]; *Gutierrez, supra,* 103 Cal.App.3d at p. 769 [explaining that injuries occurring on an employer's premises during a regular lunch break arise within the course of employment, as being incidental to the employment, and are exclusively compensable through workers compensation, even though the lunch break is technically outside the regular hours of employment, is uncompensated, and the employee is not under the control of their employer].)

We reject the various arguments plaintiffs' offer for a different result, including their contention that the trial court misapplied the "premises line rule" because Wrenne was neither entering nor exiting his employer's premises at the time of the stabbing but rather "off duty and engaged in a purely personal act" that was not providing any benefit to his employer. As we have discussed, it is undisputed that Wrenne was fatally stabbed in the Taco Bell parking lot during an authorized 30-minute unpaid meal break. Under these circumstances, the objective standard embodied in the premises line rule brought Wrenne's injuries within the exclusive remedy provisions of the workers' compensation scheme. The fact that Wrenne was not commuting to or from work, was on an unpaid meal break, and was engaged in a purely personal act at the time of the stabbing, does not preclude application of the premises line rule.[4] None of these factors, either individually or collectively, avoid the conclusion that plaintiffs' claims fall within the exclusive remedy provisions of the WCA.

---

[4] In their appellate briefing, plaintiffs characterize Wrenne's conduct during his meal break as "loitering" in the Taco Bell parking lot. However, the term "loiter" or "loitering" does not appear anywhere in the complaint. And there are no allegations as to what Wrenne was doing at the time of the fatal stabbing, aside from sitting on the curb in the Taco Bell parking lot. In any event, even if Wrenne was scrolling on his cell phone and smoking, as plaintiffs claim in their appellate briefing, we are unpersuaded that the workers' compensation exclusivity rule does not apply because Wrenne was "unnecessary loitering" in the parking lot at the time of the stabbing, as we discuss in more detail, *post*.

15

Plaintiffs, for their part, have not directed us to any authority that holds otherwise or persuades us that a different outcome is warranted under the facts of this case. Citing *Makins v. Industrial Accident Com*. (1926) 198 Cal. 698 and *McIvor v. Savage* (1963) 220 Cal.App.2d 128, plaintiffs argue the premises line rule is inapplicable when (as here) an employee is off duty and engaged in a purely personal act that does not benefit his employer and amounts to unnecessary loitering on the employer's premises. We find plaintiffs' reliance on *Makins* and *McIvor* misplaced. As relevant here, the *McIvor* court explained that "an injury sustained by an employee while on premises under the control of his employer, such as a parking lot, although going to or coming from work, *providing he does not unreasonably delay his entry or departure*, is sufficient to support a finding that the injury in question not only occurred in the course of, but also arose out of the employment." (*McIvor*, at p. 135, italics added; see *id*. at p. 139-140 [reversing grant of summary judgment because there was a triable issue of fact as to whether employees were acting within scope of their employment when a car accident occurred while the employees were leaving their employer's parking lot on their way home from work]; *Makins,* at p. 701 [describing the going and coming rule as follows: " 'The rule is well settled that an employee, in going to work, comes under the protection of the act when he enters the employer's premises or upon the means provided for access thereto, though the premises and such means of access are not wholly under the employers control or management' " " 'and the same rule applies when the employee is leaving such working premises provided he does not unnecessarily loiter thereon' "].) Here, because it is undisputed that Wrenne's injuries were not sustained while he was commuting to or from work, neither *McIvor* nor *Makins* is helpful to plaintiffs. The complaint does *not* allege that Wrenne was injured after the completion of his shift while he was unreasonably delaying his departure from his employer's premises. Instead, it alleges that Wrenne was fatally stabbed in the Taco Bell parking lot during an unpaid 30-minute meal break. Even were we to assume that Wrenne's conduct--sitting on the curb of the Taco Bell parking

16

lot during his meal break--was not expressly authorized by his employer, his conduct (as we have explained) was an incidental event connected with his assigned work such that his injuries arose within the course of his employment for purposes of workers' compensation liability. (See *Gutierrez, supra*, 103 Cal.App.3d at p. 769 ["injuries occurring on the premises of the employer ... during a regular lunch break arise within the course of employment, as being incidental to such employment," even if the break is uncompensated].)

Having reviewed the other cases on which plaintiffs rely, we find them to be materially distinguishable and therefore inapposite. (See, e.g., *Mason v. Lake Dolores Group* (2004) 117 Cal.App.4th 822, 834 [waterpark employee was injured after the park was closed while using waterslides in violation of employer's policy]; *Todd v. Workers' Comp. Appeals Bd.* (1988) 198 Cal.App.3d 757, 759-760 [employee injured on the employer's premises during unpaid lunch break while voluntarily playing basketball with fellow employees (which was unrelated to his work duties)];[5] *Rogers v. Workers' Comp. Appeals Bd.* (1985) 172 Cal.App.3d 1195, 1197-1198 [employee was robbed and assaulted in her employer's parking lot after returning from personal trip to bank during lunch hour to cash her check]; *County of Los Angeles v. Workers' Comp. Appeals Bd.* (1983) 145 Cal.App.3d 418, 420, 422-423 [employee was injured during unpaid lunch hour away from employer's premises when car crashed into restaurant where she was

---

[5] Among the various statutory "conditions of compensation" (or requirements for workers' compensation liability) include the following: "Where the injury does not arise out of voluntary participation in any off-duty recreational, social, or athletic activity not constituting part of the employee's work-related duties, except where these activities are a reasonable expectancy of, or are expressly or impliedly required by, the employment." (§ 3600, subd. (a)(9).) The Court of Appeal in *Todd* relied on this specific provision of the WCA to find that the employee, who sustained an injury on his employer's premises while playing basketball during his lunch break, was not entitled to workers' compensation. (*Todd v. Workers' Comp. Appeals Bd., supra*, 198 Cal.App.3d at pp. 759-760.)

eating]; *Mission Ins. Co. v. Workers' Comp. Appeals Bd.* (*Fitzgerald*) (1978) 84 Cal. App.3d 50, 56-57 [employee was injured in car accident over a mile away from the employer's premises while driving to a restaurant during an unpaid lunch break]; *General Ins., supra*, 16 Cal.3d at pp. 597-600 [employee struck and killed by a passing motorist prior to entering his employer's premises]; *State Department of Institutions v. Industrial Accident Commission* (1941) 46 Cal.App.2d 439 [hospital employee was injured while reentering her employer's building to search for a fellow employee after she had left the hospital at the completion of her work shift, drove her car from the hospital parking to the front entrance, and waited 10 minutes].)

*III*

*Leave to Amend*

As noted *ante*, when a demurrer is sustained without leave to amend, we must decide whether there is a reasonable possibility that the defect can be cured by amendment. (*Blank v. Kirwan, supra*, 39 Cal.3d at p. 318; *Schifando v. City of Los Angeles, supra*, 31 Cal.4th at p. 1081.) The plaintiff bears the burden to show that reasonable possibility. (*Blank,* at p. 318; *Schifando*, at p. 1081.) That burden requires the plaintiff to specifically show what facts he or she could plead to state viable causes of action if allowed the opportunity to amend. (*Cantu v. Resolution Trust Corp.* (1992) 4 Cal.App.4th 857, 890.) To meet that burden on appeal, the plaintiff must "enumerate the facts and demonstrate how those facts establish a cause of action. [Citations.] Absent such a showing, the appellate court cannot assess whether or not the trial court abused its discretion by denying leave to amend." (*Ibid.*)

Plaintiffs did not argue in the trial court that they should be granted leave to amend their complaint. On appeal, they make no effort to demonstrate how the complaint could be amended to allege sufficient facts to state a viable cause of action against any defendant. As such, there is no basis for finding an abuse of discretion. (See *Rakestraw v. California Physicians' Service* (2000) 81 Cal.App.4th 39, 44 ["Where the

18

appellant offers no allegations to support the possibility of amendment and no legal authority showing the viability of new causes of action, there is no basis for finding the trial court abused its discretion when it sustained the demurrer without leave to amend"].) Accordingly, the trial court did not err in sustaining the demurrers without leave to amend.

## DISPOSITION

The judgment is affirmed.  Respondents are entitled to recover their costs on appeal.  (California Rule of Court, rule 8.278(a).)

/s/ _____
DUARTE, J.*

We concur:

/s/ _____
EARL, P. J.

/s/ _____
WISEMAN, J.†

_____

* Retired Associate Justice of the Court of Appeal, Third Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

† Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.